1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JACOB DEVINE, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

BETHESDA SOFTWORKS LLC, BETHESDA SOFTWORKS, and ZENIMAX MEDIA INC.,

Defendants.

No. 2:21-mc-00014 RSM

[Subpoena Issued from the U.S. District Court for the District of Maryland, Case No. 8:19-cv-02009-TDC]

**DECLARATION OF MARGARET A. ESQUENET IN SUPPORT OF BETHESDA SOFTWORKS LLC AND ZENIMAX MEDIA, INC.'S MOTION TO QUASH JACOB DEVINE'S SUBPOENA TO MICROSOFT CORPORATION**

I, Margaret A. Esquenet, declare as follows:

1.    I am an attorney at Finnegan, Henderson, Farabow, Garrett & Dunner LLP, and am counsel for Defendants Bethesda Softworks LLC and ZeniMax Media Inc. ("Bethesda") in this action. The facts in this declaration are based on my personal knowledge and/or belief. If called upon to do so, I would testify completely to the facts contained in this Declaration.

2.    On or around, January 11, 2021, counsel for Plaintiff Jacob Devine provided to me a copy of a subpoena he intended to serve on Microsoft Corporation. I understand the

DECLARATION OF MARGARET A. ESQUENET –
Page 1

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

1    subpoena was issued from the pending case, *Devine v. Bethesda*, 8:19-cv-02009-TDC (D.

2    Md. 2019) originally filed on July 9, 2019 and amended on October 23, 2019 (the

3    "Maryland Litigation").

4          3.      A true and correct copy of the Fed. R. Civ P. 45 subpoena from Plaintiff

5    Devine in the Maryland Litigation directed to Microsoft Corporation I received is attached

6    to this declaration as Exhibit A (the "Microsoft Subpoena").

7          4.      Exhibit B, attached hereto, is a true and correct copy of ECF No. 40 in the

8    Maryland Litigation filed October 23, 2019 (Bethesda's Answer and Affirmative Defenses

9    to Plaintiff's First Amended Complaint).

10         5.      Exhibit C, attached hereto, is a true and correct copy of ECF No. 81 in the

11    Maryland Litigation (September 4, 2020 Order Staying Deadline).

12         6.      Between January 29, 2021 and February 1, 2021, I made a good-faith effort

13    to confer via email with counsel for Plaintiff Devine, Filippo Marchino, regarding issues

14    with the Microsoft Subpoena raised in the accompanying motion to quash. No agreement

15    was reached.

16         7.      Exhibit D, attached hereto, is a true and correct copy of ECF No. 90 in the

17    Maryland Litigation (December 31, 2020 Joint Status Report).

18         8.      Exhibit E, attached hereto, is a true and correct copy of ECF No. 91 in the

19    Maryland Litigation (January 11, 2020 Order Directing Parties to Submit a Joint Proposed

20    Scheduling Order).

21         9.      Exhibit F, attached hereto, is a true and correct copy of ECF No. 95 in the

22    Maryland Litigation (Feb. 3, 2021 Amended Scheduling Order).

23        10.      Exhibit G, attached hereto, is a true and correct copy of ECF No. 47 in the

24    Maryland Litigation (January 22, 2020 Scheduling Order).

25

26

DECLARATION OF MARGARET A. ESQUENET –
Page 2

1          I declare under penalty of perjury that the foregoing is true and correct pursuant to 28

2    U.S.C. § 1746.

3          Executed on this 4th day of February, 2021, in Bethesda, Maryland.

4

5

6                                     _____

7                                     Margaret A. Esquenet

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF MARGARET A. ESQUENET –
Page 3

# **<u>EXHIBIT A</u>**

1    FILIPPO MARCHINO, SBN: 256011
THE X-LAW GROUP, PC
2    625 Fair Oaks Ave., Ste. 390
South Pasadena, CA 91030
3    Phone: 2135993380 Fax: 2135993370

4    Attorney for Plaintiff
Jacob Devine

5

6            United States District Court
for the

7

8    JACOB DEVINE                 No.:  **8:19-cv-02009-TDC**

9                                     **NOTICE OF ISSUANCE OF**
Plaintiff,                 **SUBPOENA FOR PRODUCTION**
10                                     **OF DOCUMENTS,**
vs.                         **INFORMATION, OR OBJECTS**
11

BETHESDA SOFTWORKS LLC, et al.

12

13            Defendant(s)

14

15    TO ALL APPEARING PARTIES AND THEIR ATTORNEYS OF RECORDS WITH RESPECT
TO:
16

17        Microsoft Corporation c/o Corporation Service Company
2710 Gateway Oaks Dr., Suite 150N
Sacramento,CA 95833
18

19    PLEASE TAKE NOTICE that pursuant to Federal Rules of Civil Procedure, Rule 45(b)(1),

20    Plaintiff, Jacob Devine, has issued a subpoena to produce documents, information, or objects to

21    the Custodian/Witness/Deponent listed above and copy of the subpoena is attached, hereto.

22

23    Dated:  1/11/2021

24

25                            By: /s/ FILIPPO MARCHINO

26                            Attorney for Plaintiff
Jacob Devine

27

28

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Maryland

| | | |
|---|---|---|
| JACOB DEVINE | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  8:19-cv-02009-TDC |
| BETHESDA SOFTWORKS LLC, BETHESDA | ) | |
| SOFTWORKS, and ZENIMAX MEDIA INC. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Microsoft Corporation

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:See attached Schedule A

| Place:  Nationwide Legal, LLC | Date and Time: |
|---|---|
| 716 10th Street, Suite 102 | |
| Sacramento, CA 95814 | 02/05/2021  2:00 pm |

Otherwise, please produce at Law Office of Zack V. Muljat 114 W. Magnolia Street, Suite 441 Bellingham, WA 98225
☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  01/11/2021

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Plaintiff Jacob
Devine _____ , who issues or requests this subpoena, are:

Filippo Marchino, The X-Law Group, P.C. 625 Fair Oaks Ave., Suite 390 South Pasadena, CA 91030 (213) 599-3380

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# Schedule A

<u>INSTRUCTIONS</u>

1.       Pursuant to Rule 45(d)(2)(B), if you object to a request, the grounds for each objection must be stated with specificity. Also pursuant to that Rule, if you intended to produce copies of documents or of ESI instead of permitting inspection, you must so state.

2.       If, in responding to this Subpoena, the responding party encounters any ambiguities when construing a request or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

3.       Pursuant to Rule 45(e)(A), an objection must state whether any responsive materials are being withheld on the basis of that objection.

4.       Whenever in this Subpoena you are asked to identify or produce a document which is deemed by you to be properly withheld from production for inspection or copying:

A.  If you are withholding the document under claim of privilege (including, but not limited to, the work product doctrine), please provide the information set forth in United States District Court of the District of Maryland Discovery Guideline 10(d)(ii)(b). For electronically stored information, a privilege log (in searchable and sortable form, such as a spreadsheet, matrix, or table) generated by litigation review software, containing metadata fields that generally correspond to the above paragraph is permissible, provided that it also discloses whether transmitting, attached or subsidiary ("parent child") documents exist and whether those documents have been produced or withheld.

B.  If you are withholding the document for any reason other than an objection that it is beyond the scope of discovery, identify as to each document and, in addition to the information requested in paragraph 4.A, above, please state the reason for withholding the document.

1

If you are withholding production on the basis that ESI is not reasonably accessible because of undue burden or cost, provide the information required by Discovery Guideline 10(e).

5.      When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

6.      It is intended that this Subpoena will not solicit any material protected either by the attorney/client privilege or by the work product doctrine which was created by, or developed by, counsel for the responding party after the date on which this litigation was commenced. If any Request for Production is susceptible of a construction which calls for the production of such material, that material need not be provided and no privilege log will be required as to such material.

7.      If documents are produced as electronically stored information, they shall be produced in their native format pursuant to the Native Format Production Protocol found in Appendix 2.2 of the United States District Court for the District of Maryland's Principles for the Discovery of Electronically Stored Information in Civil Cases.

<u>DEFINITIONS</u>

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil

DECLARATION OF MARGARET A. ESQUENET –

Procedure. As used in this Subpoena, the following terms are to be interpreted in accordance with these definitions:

1.      *Concerning:* The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

2.      *Communication:* The term "communication" means the transmittal of information by any means.

3.      *Document:* The terms "document" and "documents" are defined to be synonymous in meaning and equal in scope to the term "items" in Fed. R. Civ. P. 34(a)(1) and include(s), but is not limited to, electronically stored information. The terms "writings," "recordings," and "photographs" are defined to be synonymous in meaning and equal in scope to the usage of those terms in Fed. R. Evid. 1001. A draft or non-identical copy is a separate document within the meaning of the term "document."

4.      *Occurrence/Transaction:* The terms "occurrence" and "transaction" mean the events described in the Complaint and other pleadings, as the word "pleadings" is defined in Fed. R. Civ. P. 7(a).

5.      *Affiliate*: The term "affiliate" means a subsidiary, parent, or sibling corporation, limited liability company, partnership or other entity.

6.      *Parties:* The terms "plaintiff" and "defendant" (including, without limitation, third-party plaintiff, third-party defendant, counter claimant, cross-claimant, counter-defendant, and cross-defendant), as well as a party's full or abbreviated name or a pronoun referring to a party, mean that party and, where applicable, its officers, directors, employees, and affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation or to limit the Court's jurisdiction to enter any appropriate order.

7.      *Person:* The term "person" is defined as any natural person or any business, legal or governmental entity or association.

8.      *You/Your:* The terms "you" or "your" include the person(s) to whom these requests are addressed, and all of that person's agents, representatives, attorneys, and affiliates.

9.      "Litigation" refers to <u>Devine v. Bethesda Softworks LLC et al.</u>, No. 8:19-cv-02009-TDC (D. Md.). A copy of the First Amended Complaint filed in this Litigation is attached.

10.      The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all;" "any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompass both "and" and "or." Words in the masculine, feminine, or neuter form shall include each of the other genders.

11.      If the requested documents are maintained in a file, the file folder is included in the request for production of those documents.

DOCUMENT REQUESTS

12.      All documents concerning the contractual terms of your acquisition of ZeniMax Media Inc.

13.      All documents concerning which persons are to receive cash, and the amount of cash each person will receive, from you as part of the transaction in which it will acquire ZeniMax Media Inc.

14.      All documents concerning the liability exposure of ZeniMax Media Inc. and Bethesda Softworks LLC from this Litigation, including the fact that based on a number calculated by counsel for ZeniMax Media Inc. and Bethesda Softworks LLC, each class member has damages of $281, meaning the aggregate damages of the class is in the hundreds of millions of dollars, exclusive of punitive damages.

15.     All documents concerning whether you will assume liability for, indemnify, or otherwise cover a judgment against ZeniMax Media Inc. or Bethesda Softworks LLC. in this Litigation if your acquisition of ZeniMax Media Inc. is consummated.

16.     All documents concerning whether shareholders of ZeniMax Media Inc.  will assume liability for, indemnify, or otherwise cover a judgment against ZeniMax Media Inc. or Bethesda Softworks LLC. in this Litigation if your acquisition of ZeniMax Media Inc. is consummated.

DECLARATION OF MARGARET A. ESQUENET –

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## GREENBELT DIVISION

| | |
|---|---|
| JACOB DEVINE, Individually and on Behalf of All Others Similarly Situated<br><br>        Plaintiff,<br><br>v.<br><br>BETHESDA SOFTWORKS LLC, BETHESDA SOFTWORKS, and ZENIMAX MEDIA INC.,<br><br>        Defendants. | Case No. 8:19-cv-02009-TDC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES:**<br><br>1.  Breach of Contract<br>2.  Unjust Enrichment<br>3.  Promissory Estoppel<br>4.  Deceit or Fraud<br>5.  Fraudulent Concealment<br>6.  Negligent Misrepresentation<br>7.  Tort Arising Out of Breach of Contract<br>8.  Breach of Express Warranty<br>9.  Violation of Maryland Consumer Protection Act<br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1.      Plaintiff Jacob Devine ("Plaintiff") brings this suit against Bethesda Softworks LLC, Bethesda Softworks, and ZeniMax Media Inc. (collectively, "Defendants") to recover damages owed to him and others similarly situated.

2.      Defendants are the developers and publishers of the video game Fallout 4 and the downloadable content ("DLC") for it.  Defendants sold a season pass for the game (the "Season Pass") which was advertised by Defendants as follows: "get the Fallout 4 season pass and get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."  Plaintiff and other purchasers of the Season Pass did not in fact receive all DLC for the game.  Instead, Defendants subsequently released content through their Creation Club, which in fact is DLC, but was not provided to Season Pass holders.

3.      As a result of Defendants' fraud and other actions, Plaintiff and other purchasers of the Season Pass have suffered significant damages.

**PARTIES**

4.      Plaintiff Jacob Devine ("Plaintiff")[1], is a citizen of the State of California. Plaintiff is a purchaser of the Season Pass.

5.      Defendant Bethesda Softworks LLC is a Delaware limited liability company with its principal place of business in Rockville, Maryland.  Bethesda Softworks LLC is a video game developer and publisher which publishes, among other games, the Elder Scrolls and Fallout series of videogames.  Games in both series are created by Bethesda Game Studios, a video game developer that is a division of Bethesda.  The Elder Scrolls games take place in a medieval fantasy universe, while the Fallout games take place in a post-apocalyptic science fiction universe. Games from these two series are consistently among the best sellers in the year of their release, typically selling millions of copies within the first few weeks, and continue to sell many more copies for years thereafter.

6.      Defendant Bethesda Softworks is a business entity, form unknown, with its principle place of business in Rockville, Maryland.  On information and belief, Bethesda Softworks is a trade name of Bethesda Softworks, LLC.  Plaintiff will refer to Bethesda Softworks, LLC and Bethesda Softworks collectively as "Bethesda."

7.      Defendant ZeniMax Media Inc. is a Delaware corporation with its principal place of Business in Rockville, Maryland.  ZeniMax Media Inc. is a video game holding company that owns, among other companies, Bethesda.

8.      Bethesda and ZeniMax Media Inc. are collectively referred to in this Complaint

---

[1] Plaintiff turned 18 after the filing of this lawsuit.  Accordingly, Plaintiff's mother, Suzanne Devine will no longer serve as his next friend and legal guardian in this litigation.

DECLARATION OF MARGARET A. ESQUENET –

as "Defendants."

9.       Plaintiff is informed and believes, and upon such basis alleges, that at all times

herein mentioned, each of the Defendants herein was an agent, servant, employee, co-conspirator,

partner, joint venturer, wholly owned and controlled subsidiary and/or alter ego of each of the

remaining Defendants, and was at all times acting within the course and scope of said agency,

service, employment, conspiracy, partnership and/or joint venture.

10.      Defendants, and each of them, aided and abetted, encouraged and rendered

substantial assistance in accomplishing the wrongful conduct and their wrongful goals and other

wrongdoing complained of herein.  In taking action, as particularized herein, to aid and abet and

substantially assist the commission of these wrongful acts and other wrongdoings complained of,

each of the Defendants acted with an awareness of its primary wrongdoing and realized that its

conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals,

and wrongdoing.


### JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction over this action pursuant to the Class

Action Fairness Act of 2005 and 28 U.S.C. § 1332 because there are over 100 members of the

proposed class, at least one member of the proposed class has different citizenship from a

defendant and the total matter in controversy exceeds $5,000,000.

12.      Venue is proper pursuant to 28 U.S.C. § 1391(b) & (c) because a substantial part

of the events or omissions giving rise to the claim occurred in this judicial district, because

Defendants carry on business and reside within this judicial district, and because Defendants are

subject to the Court's personal jurisdiction in this judicial district.

3

DECLARATION OF MARGARET A. ESQUENET –
Page 15

## FACTS

**A.  Background Information on Downloadable Content ("DLC").**

13.     Beginning in the mid 2000s, the video game industry developed the business practice of selling downloadable content ("DLC").  DLC encompasses a wide variety of content that is developed so that it can be added to a video game contemporaneously with the release of the game or subsequent to the release of the game.  The DLC business model allows publishers to further monetize a game after it is released by selling the DLC to purchasers of the game.  DLC may be developed by the same studios that are responsible for creating the game itself or by outside entities that enter into contracts to create DLC for the game.

14.     DLC can encompass a wide variety of content that is added to the game, depending on the game's genre.  For example, a racing game may add additional race tracks and cars as DLC, while a shooter game may add additional guns that the player may use within the game.  "Skins" are a common type of DLC.  Skins change the cosmetic appearance of items within the game.  For example, a shooter game may sell gun skins that apply a camouflage pattern to the gun as DLC.

15.     Defendants were pioneers of selling DLC.  In 2006 Defendants released DLC for their game The Elder Scrolls IV: Oblivion ("Oblivion"), including the "Horse Armor Pack" DLC (armor that could be worn by the player's horse).  In 2007, Bethesda's Vice President of Public Relations and Marketing, Pete Hines, was quoted in the media as saying that "We were the first ones to do downloadable content like that - some people had done similar things, but no one had really done additions where you add new stuff to your existing game."  The Horse Armor Pack DLC was widely ridiculed by video game journalists and Defendants themselves increased the

DECLARATION OF MARGARET A. ESQUENET –
Page 16

price of it as an April Fool's joke in 2009, when they held a 50% off sale for all of Oblivion's DLC, with the exception of the Horse Armor Pack, which was twice as expensive as usual.

16.     As DLC proliferated in the video game industry, publishers began to offer "season passes." Season passes are a bundle of DLC offered to consumers, typically at a discount over purchasing DLC à la carte. Season passes specify the content that will be included with the purchase of the season pass, either by listing the specific DLC that will be included, or by stating that the season pass encompasses all DLC that will be released for the game. Season passes are frequently available for purchase before the game itself is released, well before the DLC included in the season pass is released, and often before the DLC itself has been created.

**B.  Background Information on Mods.**

17.     For several decades, video game players have created modifications, commonly referred to as "mods" for video games. Mods predate DLC, but are similar to DLC in the scope of content that mod creators may add to a game. However, a crucial difference between mods and DLC is that mods are created and distributed for free by fans, while DLC is created and sold by the publisher of the game for profit.

18.     In April of 2015 Defendants partnered with Valve Corporation ("Valve") to offer paid mods for The Elder Scrolls V: Skyrim. Mod creators were able to post their creations on Valve's digital distribution platform, Steam, and set a price for purchase. Revenue from sales were split between the mod creator, Defendants, and Valve. The announcement of paid mods was met with widespread consumer backlash and negative press coverage, and Valve and Defendants terminated the program and refunded purchasers less than a week after it had launched. Among other problems, at least one paid mod was removed from sale before the

5

program was terminated because it used content from a mod created by another individual.

## C.  Defendants Announce and Release Fallout 4 and the Season Pass.

19.     Defendants first announced Fallout 4 in June 2015.  In a September 9, 2015

posting on Bethesda's website, Defendants announced the Fallout 4 Season Pass.  Defendants

explained that:

> We've always done a lot of DLC for our games. We love making
> them and you always ask us for more. To reward our most loyal fans,
> this time we'll be offering a Season Pass that will get you all of the
> Fallout 4 DLC we ever do for just $30. Since we're still hard at work
> on the game, we don't know what the actual DLC will be yet, but it
> will start coming early next year. Based on what we did for
> Oblivion, Fallout 3, and Skyrim, we know that it will be worth at
> least $40, and if we do more, you'll get it all with the Season Pass.

This announcement was widely reported on in the news media.

20.     Defendants offered the Season Pass for sale through a number of digital and

physical stores.  Defendants offered the Season Pass for sale separate from Fallout 4 as well as in

a bundle with the game itself.

21.     Regardless of where the Season Pass was offered for sale, the Season Pass's

description consistently stated "get the Fallout 4 season pass and get all Fallout 4 DLC for one

S.P.E.C.I.A.L. price."  On information and belief, Defendants either directed these marketplaces

to include this description in the product listings or were able to directly insert it into the listings

themselves.  Furthermore, when Defendants sold physical copies of the Season Pass, in the form

of redeemable codes printed on cards, the same language appeared on the packaging as well.

Moreover, essentially identical language appeared on product listings and packaging in foreign

markets as well, with the relevant verbiage translated into a variety of other languages.  Physical

copies of Fallout 4 contained a flyer advertising the Season Pass and stating "All Access Granted-

Season Pass."

22.     Fallout 4 was released on November 10, 2015 and is available to play on Windows personal computers ("PCs"), Microsoft Corporation's Xbox One ("Xbox")  video game console, and Sony Interactive Entertainment LLC's PlayStation 4 ("PlayStation').  According to a post by Defendants on Bethesda's website, Fallout 4 "launched with approximately 12 million units worldwide, representing sales in excess of $750 million."  Defendants reported that some of their retail partners had stated that Fallout 4 set records for the most pre-ordered game of 2015 as well as for launch day sales.

23.     Following the launch of Fallout 4, Defendants released several DLC for the game. Included in the DLC was new weapons, apparel, locations, characters, creatures, and quests.


**D.  Defendants Announce Creation Club.**

24.     Creation Club was announced on June 11, 2017.  On their website, Defendants characterize Creation Club as "a collection of all-new content for both Fallout 4 and Skyrim. It features new items, abilities, and gameplay created by Bethesda Games Studios and outside development partners including the best community creators. Creation Club content is fully curated and compatible with the main game and official add-ons."  Defendants state that:

> Creation Club will feature a wide variety of content including but not limited to:
> WEAPONS: New weapons, material skins, parts, etc.
> APPAREL: New outfits, armor, and items for your character.
> WORLD: New locations, decorations, foliage, etc.
> CHARACTERS: New abilities, characters, companions, etc.
> CREATURES: New enemies, mounts, pets, etc.
> GAMEPLAY: New types of gameplay like survival mode, etc.

Defendants also explain that Creation Club content "is available via in-game digital marketplaces in both Fallout 4 and Skyrim and purchased with Credits. Credits are available for purchase on

7

PSN, Xbox Live, and Steam."

25.     In a Frequently Asked Questions section of their website, Defendants posted the

following:

> **Is Creation Club paid mods?**
> No. Mods will remain a free and open system where anyone can
> create and share what they'd like. Also, we won't allow any existing
> mods to be retrofitted into Creation Club, it must all be original
> content. Most of the Creation Club content is created internally,
> some with external partners who have worked on our games, and
> some by external Creators. All the content is approved, curated, and
> taken through the full internal dev cycle; including localization,
> polishing, and testing. This also guarantees that all content works
> together. We've looked at many ways to do "paid mods", and the
> problems outweigh the benefits. We've encountered many of those
> issues before. But, there's a constant demand from our fans to add
> more official high quality content to our games, and while we are
> able to create a lot of it, we think many in our community have the
> talent to work directly with us and create some amazing new things.

In short, Creation Club content is indistinguishable from DLC, including DLC released for Fallout

4 by Defendants themselves.  In fact, in an interview with GameSpot following Creation Club's

announcement, Bethesda's Vice President of Public Relations and Marketing, Pete Hines,

characterized Creation Club content as "almost like mini DLCs in some way."  He went on to

explain that "they are internally created, or internally created along with external developers.

They're fully internally developed and work the same across all three platforms. They're

guaranteed to work with your save games. They don't turn off Achievements or Trophies, unlike

mods. They're guaranteed to work with all DLC. They'll be localized as needed. They will be put

out and created as official content from the studio."  He explained that "It's managed by us as

official content and then put up and made available."  Hines subsequently explained on Twitter

that Creation Club content is "tested by our QA and will be compat [sic] with game and DLC,

doesn't turn off achievements and trophies. it's like mini DLCs."

8

DECLARATION OF MARGARET A. ESQUENET –
Page 20

26.     The Fallout 4 Creation Club launched on August 28, 2017.  At launch, Defendants offered a number of items through Creation Club, including weapons, apparel, and quests.  For example, in an apparent reference to their prior Horse Armor Pack DLC, Defendants offered "Power Horse Armor" (armor made out of toy horses and intended to be worn by a human).  Defendants also offered paint jobs for various items within Fallout 4 i.e. skins.  Following the launch of Creation Club, Defendants have continued to release dozens of additional items for purchase with Credits.  On information and belief it would cost at least $150 worth of Credits to purchase all of the Fallout 4 Creation Club content released thus far.

27.     Defendants have not made Fallout 4 Creation Club content available to purchasers of the Season Pass.  Nor have Defendants corrected the marketing of the Season Pass to reflect the fact that it does not include Creation Club content.  In fact, listings for the Season Pass *still* say that purchasers will "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."  Instead, Defendants have created a distinction without a difference so that they can sell Creation Club content to purchasers of the Season Pass

28.     On information and belief, following the backlash resulting from their attempt to sell paid mods for Skyrim, Defendants instead opted to assert control over the commercial content creation process for their games and developed the Creation Club.  Doing so allowed Defendants to maintain quality control over content sold for their games.  However, this came at the cost of requiring Defendants to develop the content internally or with third parties working as independent contractors under the supervision of Defendants.  In short, Defendants' solution to the problems present in the paid mod business model was to instead sell additional DLC.  Furthermore, on information and belief, Defendants' had settled on this solution well before the Creation Club was announced, meaning Defendants knew that the Season Pass would not provide purchasers with all

9

DLC as promised.

## CLASS REPRESENTATIVE

29.     Plaintiff Devine purchased Fallout 4 at a GameStop store located in California a few weeks after the release of the game in 2015.  Subsequently, on or about April 27, 2019, Devine purchased the Season Pass for Xbox One via his Xbox Console, from the Xbox Games Store/Microsoft Store.  The Xbox Games Store/Microsoft Store is a digital distribution platform that allows Xbox One console users to purchase digital copies of games, season passes, and DLC for their Xbox One consoles directly from the consoles themselves.  The product description for the Season Pass of Fallout 4 on the Xbox Games Store/Microsoft Store stated (and continues to state) "get the Fallout 4 season pass and get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."  In purchasing the Season Pass, Devine relied on Defendants' representation in the product description that he would "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price" (i.e. that he would receive all of the Fallout 4 DLC.)  and yet, contrary to what he expected, the Season Pass did not give him access to the content from the Creation Club.  Plaintiff has neither entered into any arbitration agreement with Defendants nor entered into any arbitration agreement with any third parties that would govern Plaintiff's claims against Defendants in this action.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action on his own behalf, through his representative, and as a class action on behalf of the Class defined herein, pursuant to, and properly maintainable under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3).  The Class consists of millions of Season Pass holders victimized by Defendants' fraud and other actions.  Specifically, Plaintiff brings this suit on behalf of the following Class:

10

DECLARATION OF MARGARET A. ESQUENET –
Page 22

The "**Worldwide Damages Class**":  All persons who paid for and/or acquired the Season Pass for Fallout 4, regardless of platform or method of purchase.  The class excludes counsel representing the class and all persons employed by said counsel, governmental entities, Defendants Bethesda Softworks LLC, Bethesda Softworks, and ZeniMax Media Inc., any entity in which Defendants Bethesda Softworks LLC or ZeniMax Media Inc. have a controlling interest, Defendants Bethesda Softworks LLC, Bethesda Softworks, or ZeniMax Media Inc.'s  officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other class members.

31.     Devine will be the class representative of the Worldwide Damages Class.

32.     Defendants subjected Plaintiff and the Class to the same wrongdoing and harmed them in the same manner. Now, Plaintiff and the Class seek to enforce the same rights and remedies pursuant to the same legal theories: breach of contract, unjust enrichment, promissory estoppel, fraud or deceit, fraudulent concealment, negligent misrepresentation, tort arising out of breach of contract, breach of express warranty, and violation of the <u>Maryland Consumer Protection Act</u>.

33.     <u>Numerosity</u>: The proposed class is so numerous that individual joinder of all its members is impracticable. While the exact number and identities of the Class Members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. It is estimated that the "Worldwide Damages Class" consists of at least one million members. The disposition of the claims of these Class Members in a single class action will provide substantial benefits to all parties and to the Court.

34.     <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class in that his claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and is based on the same legal theory as their claims.  Moreover, Plaintiff's measure of damages is the same as that of the Class.

DECLARATION OF MARGARET A. ESQUENET –
Page 23

35.    <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class. Undersigned counsel has substantial experience in prosecuting complex lawsuits and class action litigation. Plaintiff and undersigned counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interests adverse to the Class.

36.    <u>Superiority of Class Action and Impracticability of Individual Actions</u>: Plaintiff and the members of the Class suffered the same harm as a result of Defendants' unlawful conduct.  The same claims and defenses are at issue for all class members.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Individual joinder of all members of the Class is impractical. Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by the Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class Members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system, and protects the rights of the Class Members. Adjudication of individual Class Members' claims with respect to Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other Class Members to protect their interests.

37.    <u>Common Questions of Law and Fact Predominate</u>: In addition, the requirements of Federal Rule of Civil Procedure 23 are satisfied by questions of law and fact common to the claims of Plaintiff and of each member of the Worldwide Damages Class and which predominate over

DECLARATION OF MARGARET A. ESQUENET –
Page 24

any question of law or fact affecting only individual members of the Worldwide Damages Class. Common questions of law and fact include, but are not limited to, the following:

i.    Are members of the Worldwide Damages Class entitled to all Fallout 4 DLC as a result of their purchase of the Season Pass?

ii.    Is Creation Club content DLC?

iii.    Did Defendants make affirmative misrepresentations that the Season Pass would provide access to all Fallout 4 DLC?

iv.    Did Defendants conceal and/or omit the fact that the Season Pass would not include Creation Club content?

v.    Did Class Members suffer damages as a result of Defendants' actions?

vi.    Did Defendants breach their contracts with class members by failing to provide them with access to Creation Club content?

vii.    Did Defendants unjustly enrich themselves at the expense of Class Members by failing to provide Class Members with access to Creation Club content?

viii.    Should Defendants be subject to promissory estoppel by failing to provide Class Members with access to Creation Club content?

ix.    Did Defendants commit promissory estoppel by failing to provide Class Members with access to Creation Club content?

x.    Did Defendants defraud Class Members?

xi.    Did Defendants engage in negligent misrepresentation?

xii.    Did Defendants engage in tortious conduct arising out of breach of contract?

xiii.    Did Defendants breach express warranties with regards to the Season Pass?

13

xiv.    Did Defendants violate the Maryland Consumer Protection Act?

38.    <u>Notice</u>: Notice can be provided via internet publication, published notice and/or through mail and paid for by the Defendants.

## FIRST CLAIM FOR RELIEF

## BREACH OF CONTRACT

### (By All Plaintiffs Against the Defendants)

39.    The allegations of paragraphs 1 through 38 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

40.    Season Passes were originally sold to Plaintiff and class members by Defendants.

41.    Defendants directly sold Season Passes to Plaintiffs, sold Season Passes to Plaintiffs through physical and/or online marketplaces that acted as Defendants' agents for the purposes of the sale, and/or sold Season Passes to physical and online marketplaces, which in turn sold the Season Passes to Plaintiffs, effectuating an assignment of the rights conferred by the Season Passes.

42.    Accordingly, Plaintiffs entered into an agreement with Defendants whereby Plaintiffs were sold Season Passes for Fallout 4.

43.    Pursuant to the terms of their contracts with Defendants, Plaintiffs were entitled to "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."

44.    Creation Club content constitutes DLC.

45.    Plaintiffs fully and properly performed all conditions, covenants, and acts required to be performed on their part in accordance with the terms and conditions of the Season

Pass purchase.

46.     Defendants breached their obligations under the agreement to Plaintiffs by failing to provide Plaintiffs with access to all Creation Club content.

47.     As a direct and proximate result of Defendants' breach, Plaintiffs have sustained damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

## SECOND CLAIM FOR RELIEF

## UNJUST ENRICHMENT

### (By All Plaintiffs Against the Defendants)

48.     The allegations of paragraphs 1 through 47 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

49.     Plaintiffs conferred a benefit upon Defendants, namely revenue from Plaintiffs' purchase of the Season Pass.

50.     Defendants were aware of the benefit they received from Plaintiffs.

51.     It is inequitable for Defendants to retain the benefit conferred on them by Plaintiffs because they received revenue from the sale of Season Passes while falsely claiming that purchasers would "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price," when they would not in fact receive the DLC from Creation Club.

52.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained

15

damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

### THIRD CLAIM FOR RELIEF

### PROMISSORY ESTOPPEL

### (By All Plaintiffs Against the Defendants)

53.     The allegations of paragraphs 1 through 52 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

54.     Defendants made a clear and definite promise to purchasers of the Season Pass: "get the Fallout 4 season pass and get all Fallout 4 DLC for one S.P.E.C.I.A.L. price"

55.     Creation Club content constitutes DLC.

56.     Defendants had a reasonable expectation that their offer would induce action on the part of Plaintiffs, namely that it would induce Plaintiffs to purchase the Season Pass.

57.     Defendants' actions induced actual and reasonable action by Plaintiffs, namely purchasing the Season Pass.

58.     Defendants' actions caused a detriment that could only be avoided by the enforcement of their promise that purchasers of the Season Pass would receive all DLC, including all Creation Club content.

59.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages.

DECLARATION OF MARGARET A. ESQUENET –

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

### FOURTH CLAIM FOR RELIEF

### FRAUD OR DECEIT

### (By All Plaintiffs Against the Defendants)

60.     The allegations of paragraphs 1 through 59 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

61.     Defendants made a false representation of material fact, namely that purchasers would "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."

62.     Defendants knew their representations were false or acted with such reckless indifference to the truth that it would be reasonable to charge Defendants with knowledge of the falsity of their representations.

63.     Defendants intended that Plaintiffs would act in reliance of such statements.

64.     Plaintiffs did justifiably rely on the representations of Defendants.

65.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages.

66.     Further, Defendants acted with malice in making their misrepresentations to Plaintiffs and Plaintiffs are accordingly entitled to punitive damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; punitive damages; attorneys' fees; all loss of interest on all amounts paid

17

DECLARATION OF MARGARET A. ESQUENET –

to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

### FIFTH CLAIM FOR RELIEF

### FRAUDULENT CONCEALMENT

### (By All Plaintiffs Against the Defendants)

67.     The allegations of paragraphs 1 through 66 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

68.     Defendants intentionally concealed a material fact that they had a duty to disclose, namely that the Season Pass would not in fact provide Plaintiffs with access to all Fallout 4 DLC and that it would not provide them with access to all Creation Club content.

69.     Defendants intended to induce Plaintiffs to act differently from how Plaintiffs would have acted had they known the true facts.

70.     Because of the concealment Plaintiffs acted in a manner different from how they would have acted had they known the true facts.

71.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages.

72.     Further, Defendants acted with malice in making their misrepresentations to Plaintiffs and Plaintiffs are accordingly entitled to punitive damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; punitive damages; attorneys' fees; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

DECLARATION OF MARGARET A. ESQUENET –
Page 30

## SIXTH CLAIM FOR RELIEF

## NEGLIGENT MISREPRESENTATION

### (By All Plaintiffs Against the Defendants)

73.     The allegations of paragraphs 1 through 72 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

74.     Defendants owe a duty of care to Plaintiffs, including, but not limited to, one arising out of their role as the entities that directly or indirectly sold and/or marketed the DLC to Plaintiffs.

75.     Defendants negligently made a false statement of material fact about the Season Pass, namely that purchasers would "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."

76.     Defendants intended that Plaintiffs would ac in reliance upon the statement.

77.     Defendants knew that Plaintiffs probably would rely on the statement, which, if false, would cause loss or injury to Plaintiffs.

78.     Plaintiffs justifiably acted in reliance on the statement.

79.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages.

80.     Further, Defendants acted with malice in making their misrepresentations to Plaintiffs and Plaintiffs are accordingly entitled to punitive damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; punitive damages; attorneys' fees; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

DECLARATION OF MARGARET A. ESQUENET –

### SEVENTH CLAIM FOR RELIEF

### TORT ARISING OUT OF BREACH OF CONTRACT

### (By All Plaintiffs Against the Defendants)

81.     The allegations of paragraphs 1 through 80 are re-alleged and incorporated herein

by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class

of similarly situated Season Pass holders.

82.     Season Passes were originally sold to Plaintiff and class members by Defendants.

83.     Defendants directly sold Season Passes to Plaintiffs, sold Season Passes to

Plaintiffs through physical and/or online marketplaces that acted as Defendants' agents for the

purposes of the sale, and/or sold Season Passes to physical and online marketplaces, which in turn

sold the Season Passes to Plaintiffs, effectuating an assignment of the rights conferred by the

Season Passes.

84.     Accordingly, Plaintiffs entered into an agreement with Defendants whereby

Plaintiffs were sold Season Passes for Fallout 4.

85.     Pursuant to the terms of their contracts with Defendants, Plaintiffs were entitled

to "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."

86.     Creation Club content constitutes DLC.

87.     Plaintiffs fully and properly performed all conditions, covenants, and acts

required to be performed on their part in accordance with the terms and conditions of the Season

Pass purchase.

88.     Defendants breached their obligations under the agreement to Plaintiffs by failing

to provide Plaintiffs with access to all Creation Club content.

89.     In stating that Plaintiffs would "get all Fallout 4 DLC for one S.P.E.C.I.A.L.

DECLARATION OF MARGARET A. ESQUENET –
Page 32

price" upon purchasing the Season Pass, Defendants knew their representations were false or acted with such reckless indifference to the truth that it would be reasonable to charge Defendants with knowledge of the falsity of their representations.   In the alternative, Defendants acted negligently in making this statement.   Moreover, Defendants intentionally concealed that the Season Pass would not in fact provide Plaintiffs with access to all Fallout 4 DLC and that it would not provide them with access to all Creation Club content.

90.     A nexus exists between Defendants' tortious acts and breach of the underlying contract such that the tortious conduct and the contract are so intertwined that one cannot be viewed in isolation from the other.

91.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages.

92.     Further, Defendants acted with malice in making their misrepresentations to Plaintiffs and Plaintiffs are accordingly entitled to punitive damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; punitive damages; attorneys' fees; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

## EIGHTH CLAIM FOR RELIEF

## BREACH OF EXPRESS WARRANTY

### (By All Plaintiffs Against the Defendants)

93.     The allegations of paragraphs 1 through 92 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

94.     A warranty existed for the Season Pass.

95.     Under the terms of the warranty, purchasers would "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."

96.     Creation Club content constitutes DLC.

97.     The Season Pass did not conform to the warranty because purchasers of the Season Pass did not receive Creation Club content.

98.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages.

99.     Before filing this lawsuit, Plaintiff provided Defendants with written notice of their breach of warranty on behalf of himself and all purchasers of the Season Pass.   On information and belief, Defendants have been aware for many months of complaints by Season Pass purchasers who have not received access to Creation Club content, but have willfully chosen to not abide by the terms of the warranty Defendants created.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages;  attorneys' fees; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

## NINTH CLAIM FOR RELIEF

## VIOLATION OF MARYLAND CONSUMER PROTECTION ACT ("MCPA"), MD. CODE COMMERCIAL LAW § 13-101 *ET SEQ.*

### (By All Plaintiffs Against the Defendants)

100.     The allegations of paragraphs 1 through 99 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

DECLARATION OF MARGARET A. ESQUENET –
Page 34

101.     Plaintiff is a consumer within the meaning of the MCPA.

102.     The Season Pass is used primarily for personal, household, and/or family purposes and constitutes a consumer contract, consumer goods and/or consumer services within the meaning of the MCPA.

103.     Among other violations of the MCPA, Defendants have done at least the following:

   i.   Defendants made false and/or misleading oral and/or written statements, visual descriptions, and/or other representations that had a capacity, tendency, and/or effect of deceiving or misleading consumers, namely that the Season Pass would provide purchasers with access to all DLC, when it in fact did not provide access to Creation Club content.

   ii.  Defendants represented that the Season Pass has a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which it does not have, namely that the Season Pass would provide purchasers with access to all DLC, when it in fact did not provide access to Creation Club content.

   iii. Defendants represented that the Season Pass is of a particular standard, quality, grade, style, or model which it not, namely that the Season Pass would provide purchasers with access to all DLC, when it in fact did not provide access to Creation Club content.

   iv.  Defendants failed to state a material fact if the failure deceives or tends to deceive, namely by failing to state that the Season Pass did not in fact provide access to all DLC, including Creation Club content.

   v.   Defendants advertised or offered the Season Pass without intent to sell, lease,

23

or rent it as advertised or offered, namely by failing to sell consumers a Season Pass that actually provides access to all DLC, including Creation Club content.

vi.    Defendants engaged in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of material facts with the intent that a consumer rely on the same in connection with the promotion or sale of the Season Pass, namely with regards to the representation that the Season Pass that provides access to all DLC, including Creation Club content.

vii.   Defendants engaged in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of material facts with the intent that a consumer rely on the same in connection with Defendants' subsequent performance with respect to their obligations under the terms of the Season Pass.

104.   As a direct and proximate result of Defendants' actions, Plaintiffs have suffered an injury and/or loss and have sustained damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; punitive damages;. attorneys' fees; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants Bethesda Softworks LLC, Bethesda Softworks, and Zenimax individually and severally as follows:

Plaintiffs seek to recover the following damages and obtain the following relief from Defendants:

DECLARATION OF MARGARET A. ESQUENET –
Page 36

(a)      Economic loss and damages suffered by Plaintiffs;

(b)      Punitive damages;

(b)      All reasonable and necessary attorneys' fees;

(c)      Court costs;

(d)      Pre and post-judgment interest;

(e)      And such other relief to which Plaintiffs may show themselves justly entitled.

Dated: October  22, 2019                              Respectfully Submitted,


                                                           /s/ Filippo Marchino

                                       Filippo Marchino, Esq. (Pro Hac Vice Granted)
                                       fm@xlawx.com
                                       Thomas E. Gray, Esq. (Pro Hac Vice Granted)
                                       tg@xlawx.com
                                       **THE X-LAW GROUP, P.C.**
                                       625 Fair Oaks Ave., Suite 390
                                       South Pasadena, CA 91030
                                       Tel: (213) 599-3380
                                       Fax: (213) 599-3370

                                       Charles Gilman, Esq. (Bar No. 26435)
                                       cgilman@gblegalteam.com
                                       H. Briggs Bedigian, Esq. (Bar No. 27113)
                                       Hbb@gblegalteam.com
                                       **GILMAN & BEDIGIAN, LLC**
                                       1954 Greenspring Drive, Suite 250
                                       Timonium, MD 21093
                                       Tel: (410) 560-4999
                                       Fax: (410) 308-3116


### JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

                                          /s/ Filippo Marchino
                                       Filippo Marchino

DECLARATION OF MARGARET A. ESQUENET –
Page 37

Civil Action No. **8:19-cv-02009-TDC**

# PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

This subpoena for *(name of individual and title, if any)*  **Microsoft Corporation c/o Corporation Service Company** was received by me on  *(date)*  **12/24/2020**

☐ I personally served the subpoena on the individual at  **2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA 95833**  on *(date)* _____ ; or

☐ I left the subpoena at the individual's residence or usual place of abode with  *(name)* ,a person of suitable age and discretion who resides there, on *(date)*  , and mailed a copy to the individual's last known address; or

☒ I served the subpoena to _____ , who is designated by law to accept service of process on behalf of  **Microsoft Corporation c/o Corporation Service Company** on _____ ;or

☐ I returned the subpoena unexecuted because ; or

☐ other  *(specify):*

*Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of*
*$*

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____

I declare under penalty of perjury that this information is true.

**Date:**

_____
*Server's signature*

_____
**None assigned**
*Printed name and title*

_____
*Server's Address*

*Additional information regarding attempted service, etc:*

**Federal Rule of Civil Procedure 45 (c),(d) and (e) (Effective 12/1/13)**

**(c) Protection of persons subject to subpoena.**
 **(1) Avoiding Undue Burden or Expense; Sanctions.** A party
or attorney responsible for issuing and serving a subpoena must
take reasonable steps to avoid imposing undue burden or
expense on a person subject to the subpoena. The issuing court
must enforce this duty and impose an appropriate sanction ◊
which may include lost earnings and reasonable attorney's fees
◊ on a party or attorney who fails to comply.
 **(2) Command to Produce Materials or Permit Inspection.**
  **(A)** *Appearance Not Required.*  A person commanded to
produce documents, electronically stored information, or
tangible things, or to permit the inspection of premises, need
not appear in person at the place of production or inspection
unless also commanded to appear for a deposition, hearing, or
trial.
  **(B)** *Objections.* A person commanded to produce documents or
tangible things or to permit inspection may serve on the party
or attorney designated in the subpoena a written objection to
inspecting, copying, testing or sampling any or all of the
materials or to inspecting the premises ◊ or to producing
electronically stored information in the form or forms requested.
The objection must be served before the earlier of the time
specified for compliance or 14 days after the subpoena is
served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the
serving party may move the issuing court for an order
compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order,
and the order must protect a person who is neither a party nor
a party's officer from significant expense resulting from
compliance.
 **(3) Quashing or Modifying a Subpoena.**
  **(A)** *When Required.* On timely motion, the issuing court must
quash or modify a subpoena that:
   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person who is neither a party nor a party's
officer to travel more than 100 miles from where that person
resides, is employed, or regularly transacts business in
person ◊ except that, subject to Rule 45(c)(3)(B)(iii), the
person may be commanded to attend a trial by traveling from
any such place within the state where the trial is held;
   **(iii)** requires disclosure of privileged or other protected matter,
if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by
a subpoena, the issuing court may, on motion, quash or modify
the subpoena if it requires:
   **(i)** disclosing a trade secret or other confidential research,
development, or commercial information;
   **(ii)** disclosing an unretained expert's opinion or information
that does not describe specific occurrences in dispute and
results from the expert's study that was not requested by a
party; or
   **(iii)** a person who is neither a party nor a party's officer to
incur substantial expense to travel more than 100 miles to
attend trial
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances
described in Rule 45(c)(3)(B), the court may, instead of quashing
or modifying a subpoena, order appearance or production under
specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that
cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably
compensated.

**(d) DUTIES IN RESPONDING TO A SUBPOENA.**
 **(1) Producing Documents or Electronically Stored
Information.**
  These procedures apply to producing documents or
electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce
documents must produce them as they are kept in the ordinary
course of business or must organize and label them to
correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not
Specified.* If a subpoena does not specify a form for producing
electronically stored information, the person responding must
produce it in a form or forms in which it is ordinarily maintained
or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One
Form.* The person responding need not produce the same
electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person
responding need not provide discovery of electronically stored
information from sources that the person identifies as not
reasonably accessible because of undue burden or cost. On
motion to compel discovery or for a protective order, the person
responding must show that the information is not reasonably
accessible because of undue burden or cost. If that showing is
made, the court may nonetheless order discovery from such
sources if the requesting party shows good cause, considering
the limitations of Rule 26(b)(2)(C). The court may specify
conditions for the discovery.
 **(2) Claiming Privilege or Protection.**
  **(A)** *Information Withheld.* A person withholding subpoenaed
information under a claim that it is privileged or subject to
protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents,
communications, or tangible things in a manner that, without
revealing information itself privileged or protected, will enable
the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response
to a subpoena is subject to a claim of privilege or of protection
as trial-preparation material, the person making the claim may
notify any party that received the information of the claim and
the basis for it. After being notified, a party must promptly
return, sequester, or destroy the specified information and any
copies it has; must not use or disclose the information until the
claim is resolved; must take reasonable steps to retrieve the
information if the party disclosed it before being notified; and
may promptly present the information to the court under seal
for a determination of the claim. The person who produced the
information must preserve the information until the claim is
resolved.

**(e) CONTEMPT.** The issuing court may hold in contempt a person
who, having been served, fails without adequate excuse to obey
the subpoena. A nonparty's failure to obey must be excused if the
subpoena purports to require the nonparty to attend or produce at
a place outside the limits of Rule 45(c)(3)(A)(ii).

**NATIONWIDE LEGAL LLC**

Nationwide Legal, LLC
1609 James M. Wood Blvd., 2nd Fl
Los Angeles, CA 90015
Phone: (877) 326-2679 Fax: (213) 249-9998

# PROOF OF SERVICE BY MAIL

Case Name:    JACOB DEVINE
                      vs.
              BETHESDA SOFTWORKS LLC, et al.

Case No.: 8:19-cv-02009-TDC

I am a resident of the State of California, County of Los Angeles. I am over the age of eighteen years and not a party to the entitled action; my business address is **1609 James M. Wood Blvd., 2nd Fl,  Los Angeles, CA 90015.**

On  **January 11, 2021** I served this Notice of Taking Deposition (if applicable)/ Notice to Consumer (if applicable) along with the Subpoena and Affidavit in Support of Issuance (if applicable) on the attorneys for all appearing parties in said action, by placing a true copy thereof enclosed in a sealed envelope; with postage thereon fully prepaid, in the United States mail at **Los Angeles, CA,** addresses as follows:

Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Margaret Esquenet
901 New York Ave. NW
Washington, DC 20001

I declare under penalty of perjury that the forgoing is true and correct. Executed on January 11, 2021, at Los Angeles, CA.

Sincerely,

Joe Huber
VP of Operations

Order#: NWL42052-02/CPROOF23

DECLARATION OF MARGARET A. ESQUENET –
Page 40

# **EXHIBIT B**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## GREENBELT DIVISION

| | | |
|---|---|---|
| JACOB DEVINE, Individually and on Behalf of All Others Similarly Situated, | * * * | |
| | * | |
| Plaintiff(s), | * | Civil Case No.: 8:19−cv−02009−TDC |
| | * | |
| v. | * | |
| | * | |
| | * | **DEMAND FOR JURY TRIAL** |
| BETHESDA SOFTWORKS LLC, BETHESDA SOFTWORKS, and ZENIMAX MEDIA INC., | * * * | |
| | * | |
| Defendants. | * | |
| | * | |

### DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
### TO PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Defendants Bethesda Softworks LLC and ZeniMax Media Inc. through undersigned counsel,

respond to plaintiff Jacob Devine's First Amended Class Action Complaint as follows:

### INTRODUCTION

1.     Plaintiff Jacob Devine ("Plaintiff") brings this suit against Bethesda Softworks LLC, Bethesda Softworks, and ZeniMax Media Inc. (collectively, "Defendants") to recover damages owed to him and others similarly situated.

**ANSWER:     Defendants deny any liability or wrongdoing, and/or that Plaintiff is**

**entitled to any relief.   Defendant Bethesda Softworks is not an independent entity and**

**therefore no person or entity is able to answer or otherwise plead on its behalf.**

2.     Defendants are the developers and publishers of the video game Fallout 4 and the downloadable content ("DLC") for it.  Defendants sold a season pass for the game (the "Season Pass") which was advertised by defendants as follows: "get the Fallout 4 season pass and get all Fallout 4 DLC for one S.P.E.C.I.A.L. price." plaintiff and other purchasers of the Season Pass did not in fact receive all DLC for the game. Instead, Defendants subsequently released content through their Creation Club, which in fact is DLC, but was not provided to Season Pass holders.

**ANSWER:**    Defendants admit that Bethesda Softworks LLC is the publisher of the videogame FALLOUT® 4 and the FALLOUT® 4 DLC.  Defendants further admit that Bethesda Softworks LLC is a subsidiary of ZeniMax Media Inc.  Defendants admit that Bethesda Softworks LLC made available a season pass for the FALLOUT® 4 game (the "Season Pass") to certain third-party distributors.  Defendants deny that they "sold a season pass for the game."  Defendants do not have sufficient information to admit or deny the allegations of Paragraph 2 that the Season Pass was advertised by Defendants as alleged in Paragraph 2, and therefore deny them.  Defendants deny the allegations of Paragraph 2 that Plaintiff and other purchasers of the Season Pass did not receive all DLC for the FALLOUT® 4 game.  Defendants deny that the Creation Club content is DLC.

3.    As a result of Defendants' fraud and other actions, Plaintiff and other purchasers of the Season Pass have suffered significant damages.

**ANSWER: Denied.**

## PARTIES

4.    Plaintiff Jacob Devine ("Plaintiff ") is a citizen of the State of California. Plaintiff is a purchaser of the Season Pass.

**ANSWER:**    Defendants do not have sufficient information to admit or deny the allegations of paragraph 4 and therefore deny them.

5.    Defendant Bethesda Softworks LLC is a Delaware limited liability company with its principal place of business in Rockville, Maryland.  Bethesda Softworks LLC is a video game developer and publisher which publishes, among other games, the Elder Scrolls and Fallout series of videogames.  Games in both series are created by Bethesda Game Studios, a video game developer that is a division of Bethesda.  The Elder Scrolls games take place in a medieval fantasy universe, while the Fallout games take place in a post-apocalyptic science fiction universe.  Games from these two series are consistently among the best sellers in the year of their release, typically selling millions of copies within the first few weeks and continue to sell many more copies for years thereafter.

2

**ANSWER:** **Defendants deny that allegations relating to THE ELDER SCROLLS® have any relevance to any claim or defense and, on that basis, deny the allegations of paragraph 5 related to THE ELDER SCROLLS®. Defendants admit the remaining allegations of paragraph 5.**

6.      Defendant Bethesda Softworks is a business entity, form unknown, with its principle place of business in Rockville, Maryland.  On information and belief, Bethesda Softworks is a trade name of Bethesda Softworks, LLC.  Plaintiff will refer to Bethesda Softworks, LLC, and Bethesda Softworks collectively as "Bethesda."

**ANSWER:** **Defendants admit that Bethesda Softworks is a trade name of Bethesda Softworks LLC but deny that Bethesda Softworks is an independent business entity.**

7.      Defendant ZeniMax Media Inc. is a Delaware corporation with its principal place of Business in Rockville, Maryland.  ZeniMax Media Inc. is a video game holding company that owns, among other companies, Bethesda.

**ANSWER:** **Admitted.**

8.      Bethesda and ZeniMax Media Inc. are collectively referred to in this Complaint as "Defendants."

**ANSWER:** **Admitted.**

9.      Plaintiff is informed and believes, and upon such basis alleges, that at all times herein mentioned, each of the Defendants herein was an agent, servant, employee, co-conspirator, partner, joint venturer, wholly owned and controlled subsidiary and/or alter ego of each of the remaining Defendants, and was at all times acting within the course and scope of said agency, service, employment, conspiracy, partnership and/or joint venture.

**ANSWER:** **Denied.**

10.      Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance in accomplishing the wrongful conduct and their wrongful goals and other wrongdoing complained of herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

3

**ANSWER:**    **Denied.**

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 and 28 U.S.C. § 1332 because there are over 100 members of the proposed class, at least one member of the proposed class has different citizenship from a defendant and the total matter in controversy exceeds $5,000,000.

**ANSWER:    Defendants do not have sufficient information to admit or deny the**

**allegations of paragraph 11, and therefore deny them.**

12.    Venue is proper pursuant to 28 U.S.C. § 1391(b) & (c) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, because Defendants carry on business and reside within this judicial district, and because Defendants are subject to the Court's personal jurisdiction in this judicial district.

**ANSWER: Defendants deny that venue is proper in this District because, upon**

**information and belief, Plaintiff's claims are subject to an arbitration agreement.**

## FACTS

A. **Background Information on Downloadable Content ("DLC").**

13.    Beginning in the mid 2000s, the video game industry developed the business practice of selling downloadable content ("DLC").  DLC encompasses a wide variety of content that is developed so that it can be added to a video game contemporaneously with the release of the game or subsequent to the release of the game.  The DLC business model allows publishers to further monetize a game after it is released by selling the DLC to purchasers of the game. DLC may be developed by the same studios that are responsible for creating the game itself or by outside entities that enter into contracts to create DLC for the game.

**ANSWER: Defendants admit that DLC can possibly encompass a wide variety of**

**content that is developed to be added to video games contemporaneously or subsequent to**

**the release of the game.  Defendants further admit that DLC can possibly provide**

**additional monetization of a video game.  Defendants admit that DLC can possibly be**

**developed by the same studios that create the game itself or outside entities under contract**

4

to specifically create DLC for the game.  Defendants do not have sufficient information to

admit or deny the remaining allegations of paragraph 13, and therefore deny them.

14.     DLC can encompass a wide variety of content that is added to the game,
depending on the game's genre.  For example, a racing game may add additional race tracks and
cars as DLC, while a shooter game may add additional guns that the player may use within the
game. "Skins" are a common type of DLC.  Skins change the cosmetic appearance of items
within the game.  For example, a shooter game may sell gun skins that apply a camouflage
pattern to the gun as DLC.

**ANSWER: Defendants do not have sufficient information to admit or deny the**

**allegations of paragraph 14, and therefore deny them.**

15.     Defendants were pioneers of selling DLC.  In 2006 Defendants released DLC for
their game The Elder Scrolls IV: Oblivion ("Oblivion"), including the "Horse Armor Pack" DLC
(armor that could be worn by the player's horse).  In 2007, Bethesda's Vice President of Public
Relations and Marketing, Pete Hines, was quoted in the media as saying that "We were the first
ones to do downloadable content like that - some people had done similar things, but no one had
really done additions where you add new stuff to your existing game."  The Horse Armor Pack
DLC was widely ridiculed by video game journalists and Defendants themselves increased the
price of it as an April Fool's joke in 2009, when they held a 50% off sale for all of Oblivion's
DLC, with the exception of the Horse Armor Pack, which was twice as expensive as usual.

**ANSWER: Defendants deny that allegations relating to THE ELDER SCROLLS®**

**IV: Oblivion have any relevance to any claim or defense and, on that basis, deny the**

**allegations of paragraph 15 related to THE ELDER SCROLLS®.  Defendants do not have**

**sufficient information to admit or deny the remaining allegations of paragraph 15, and**

**therefore deny them.**

16.     As DLC proliferated in the video game industry, publishers began to offer
"season passes."  Season passes are a bundle of DLC offered to consumers, typically at a
discount over purchasing DLC à la carte.  Season passes specify the content that will be included
with the purchase of the season pass, either by listing the specific DLC that will be included, or
by stating that the season pass encompasses all DLC that will be released for the game.  Season
passes are frequently available for purchase before the game itself is released, well before the
DLC included in the season pass is released, and often before the DLC itself has been created.

**ANSWER: Defendants do not have sufficient information to admit or deny the**

**allegations of paragraph 16, and therefore deny them.**

5

B. **Background Information on Mods.**

17.     For several decades, video game players have created modifications, commonly referred to as "mods" for video games.  Mods predate DLC, but are similar to DLC in the scope of content that mod creators may add to a game.  However, a crucial difference between mods and DLC is that mods are created and distributed for free by fans, while DLC is created and sold by the publisher of the game for profit.

**ANSWER: Defendants deny the allegations of paragraph 17 that "mods are similar to DLC" and that "a crucial difference between mods and DLC is that mods are created and distributed for free by fans, while DLC is created and sold by the publisher of the game for profit."  Defendants do not have sufficient information to admit or deny the remaining allegations of paragraph 17, and therefore deny them.**

18.     In April of 2015 Defendants partnered with Valve Corporation ("Valve") to offer paid mods for The Elder Scrolls V: Skyrim.  Mod creators were able to post their creations on Valve's digital distribution platform, Steam, and set a price for purchase.  Revenue from sales were split between the mod creator, Defendants, and Valve.  The announcement of paid mods was met with widespread consumer backlash and negative press coverage, and Valve and Defendants terminated the program and refunded purchasers less than a week after it had launched.  Among other problems, at least one paid mod was removed from sale before the program was terminated because it used content from a mod created by another individual.

**ANSWER: Defendants deny that allegations relating to THE ELDER SCROLLS® V: Skyrim have any relevance to any claim or defense and, on that basis, deny the allegations of paragraph 18 related to THE ELDER SCROLLS® V: Skyrim.  Defendants cannot plead or answer on behalf of Valve, a non-party and independent entity outside any control or direction of Defendants, and, on that basis, deny the allegations of paragraph 18 related to Valve.  Defendants do not have sufficient information to admit or deny the remaining allegations of paragraph 18, and therefore deny them.**

C. **Defendants Announce and Release Fallout 4 and the Season Pass.**

6

19.     Defendants first announced Fallout 4 in June 2015.  In a September 9, 2015 posting on Bethesda's website, Defendants announced the Fallout 4 Season Pass.  Defendants explained that:

> We've always done a lot of DLC for our games.  We love making them and you always ask us for more.  To reward our most loyal fans, this time we'll be offering a Season Pass that will get you all of the Fallout 4 DLC we ever do for just $30.  Since we're still hard at work on the game, we don't know what the actual DLC will be yet, but it will start coming early next year.  Based on what we did for Oblivion, Fallout 3, and Skyrim, we know that it will be worth at least $40, and if we do more, you'll get it all with the Season Pass.

This announcement was widely reported on in the news media.

**ANSWER**: Defendants admit that Bethesda Softworks LLC "first announced

[FALLOUT® 4] in June 2015" and "[i]n a September 9, 2015 posting on Bethesda's

website, Bethesda Softworks LLC announced the [FALLOUT® 4] Season Pass."

Defendants do not have sufficient information to admit or deny the remaining allegations

of paragraph 19, and therefore deny them.

20.     Defendants offered the Season Pass for sale through a number of digital and physical stores.  Defendants offered the Season Pass for sale separate from Fallout 4 as well as in a bundle with the game itself.

**ANSWER**: Defendants admit that the Season Pass was made available to

FALLOUT® 4 customers.  Defendants deny the remaining allegations of paragraph 20.

21.     Regardless of where the Season Pass was offered for sale, the Season Pass' s description consistently stated "get the Fallout 4 season pass and get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."  On information and belief, Defendants either directed these marketplaces to include this description in the product listings or were able to directly insert it into the listings themselves.  Furthermore, when Defendants sold physical copies of the Season Pass, in the form of redeemable codes printed on cards, the same language appeared on the packaging as well. Moreover, essentially identical language appeared on product listings and packaging in foreign markets as well, with the relevant verbiage translated into a variety of other languages.  Physical copies of Fallout 4 contained a flyer advertising the Season Pass and stating "All Access Granted-Season Pass."

7

**ANSWER**: Defendants admit that certain advertising for the Season Pass stated,

"get the Fallout 4 season pass and get all Fallout 4 DLC for one S.P.E.C.I.A.L. price" and

that "physical copies of Fallout 4 contained a flyer advertising the Season Pass and stating

"All Access Granted-Season Pass."  Defendants deny the remaining allegations of

paragraph 21.

22.     Fallout 4 was released on November 10, 2015 and is available to play on
Windows personal computers ("PCs"), Microsoft Corporation's Xbox One ("Xbox") video game
console, and Sony Interactive Entertainment LLC's PlayStation 4 ("PlayStation').  According to a
post by Defendants on Bethesda's website, Fallout 4 "launched with approximately 12 million
units worldwide, representing sales in excess of $750 million."  Defendants reported that some of
their retail partners had stated that Fallout 4 set records for the most pre-ordered game of 2015 as
well as for launch day sales.

**ANSWER**: Admitted.

23.     Following the launch of Fallout 4, Defendants released several DLC for the game.
Included in the DLC was new weapons, apparel, locations, characters, creatures, and quests.

**ANSWER**: Defendants admit the allegations of paragraph 23 to the extent that

weapons, apparel, locations, characters, creatures, and quests were included in one or more

of the DLC released by Bethesda for FALLOUT® 4, which included only the following:

   a.  **Automatron, released March 22, 2016**

   b.  **Wasteland Workshop, released April 12, 2016**

   c.  **Far Harbor, released May 19, 2016**

   d.  **Contraptions Workshop, released June 21, 2016**

   e.  **Vault-Tec Workshop, released July 26, 2016**

   f.  **Nuka-World, released August 30, 2016**

Defendant's deny the remaining allegations of paragraph 23.

8

DECLARATION OF MARGARET A. ESQUENET –
Page 49

D. **Defendants Announce Creation Club.**

24.     Creation Club was announced on June 11, 2017.  On their website, Defendants characterize Creation Club as "a collection of all-new content for both Fallout 4 and Skyrim.  It features new items, abilities, and gameplay created by Bethesda Games Studios and outside development partners including the best community creators.  Creation Club content is fully curated and compatible with the main game and official add-ons."  Defendants state that:

> Creation Club will feature a wide variety of content including but not limited to:
> WEAPONS: New weapons, material skins, parts, etc.
> APPAREL: New outfits, armor, and items for your character.
> WORLD: New locations, decorations, foliage, etc.
> CHARACTERS: New abilities, characters, companions, etc.
> CREATURES: New enemies, mounts, pets, etc.
> GAMEPLAY: New types of gameplay like survival mode, etc.

Defendants also explain that Creation Club content "is available via in-game digital marketplaces in both Fallout 4 and Skyrim and purchased with Credits.  Credits are available for purchase on PSN, Xbox Live, and Steam."

**ANSWER: Admitted.**

25.     In a Frequently Asked Questions section of their website, Defendants posted the following:

> **Is Creation Club paid mods?**
> No.  Mods will remain a free and open system where anyone can create and share what they'd like.  Also, we won't allow any existing mods to be retrofitted into Creation Club, it must all be original content.  Most of the Creation Club content is created internally, some with external partners who have worked on our games, and some by external Creators.  All the content is approved, curated, and taken through the full internal dev cycle; including localization, polishing, and testing.  This also guarantees that all content works together.  We've looked at many ways to do "paid mods", and the problems outweigh the benefits.  We've encountered many of those issues before.  But, there's a constant demand from our fans to add more official high quality content to our games, and while we are able to create a lot of it, we think many in our community have the talent to work directly with us and create some amazing new things.

In short, Creation Club content is indistinguishable from DLC, including DLC released for Fallout 4 by Defendants themselves.  In fact, in an interview with GameSpot following Creation Club's announcement, Bethesda's Vice President of Public Relations and Marketing, Pete Hines,

9

characterized Creation Club content as "almost like mini DLCs in some way."  He went on to explain that "they are internally created, or internally created along with external developers.  They're fully internally developed and work the same across all three platforms.  They're guaranteed to work with your save games.  They don't turn off Achievements or Trophies, unlike mods.  They're guaranteed to work with all DLC.  They'll be localized as needed.  They will be put out and created as official content from the studio."  He explained that "It's managed by us as official content and then put up and made available."  Hines subsequently explained on Twitter that Creation Club content is "tested by our QA and will be compat [sic] with game and DLC, doesn't turn off achievements and trophies.  it's like mini DLCs."

      **ANSWER: Defendants admit to the allegations of paragraph 25 to the extent they quote directly, without alteration, from Defendants website about the Creation Club. Defendants further admit that Pete Hines gave an interview to GameSpot and admit to the allegations of paragraph 25 to the extent they quote directly, without alteration or truncation, from that interview.  Defendants admit that Pete Hines tweeted "tested by our QA and will be compat [sic] with game and DLC, doesn't turn off achievements and trophies.  it's [sic] like mini DLCs."  Defendants deny the remaining allegations of paragraph 25, including the allegation that "Creation Club content is indistinguishable from DLC, including DLC released for Fallout 4 by Defendants themselves."**

      26.    The Fallout 4 Creation Club launched on August 28, 2017.  At launch, Defendants offered a number of items through Creation Club, including weapons, apparel, and quests.  For example, in an apparent reference to their prior Horse Armor Pack DLC, Defendants offered "Power Horse Armor" (armor made out of toy horses and intended to be worn by a human).  Defendants also offered paint jobs for various items within Fallout 4 i.e. skins.  Following the launch of Creation Club, Defendants have continued to release dozens of additional items for purchase with Credits.  On information and belief it would cost at least $150 worth of Credits to purchase all of the Fallout 4 Creation Club content released thus far.

      **ANSWER: Defendants admit that the FALLOUT® 4 Creation Club was made available on August 28, 2017, that Defendants made items available through the Creation Club including weapons, apparel, and quests, including an item named "Power Horse Armor," and skins.  Defendants deny the remaining allegations of paragraph 26.**

10

DECLARATION OF MARGARET A. ESQUENET –
Page 51

27.     Defendants have not made Fallout 4 Creation Club content available to purchasers of the Season Pass.  Nor have Defendants corrected the marketing of the Season Pass to reflect the fact that it does not include Creation Club content.  In fact, listings for the Season Pass *still* say that purchasers will "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."  Instead, Defendants have created a distinction without a difference so that they can sell Creation Club content to purchasers of the Season Pass.

**ANSWER: Defendants admit that certain advertising for the Season Pass stated,**

**"get all [FALLOUT® 4] DLC for one S.P.E.C.I.A.L. price."  Defendants deny the**

**remaining allegations of paragraph 27.**

28.     On information and belief, following the backlash resulting from their attempt to sell paid mods for Skyrim, Defendants instead opted to assert control over the commercial content creation process for their games and developed the Creation Club.  Doing so allowed Defendants to maintain quality control over content sold for their games.  However, this came at the cost of requiring Defendants to develop the content internally or with third parties working as independent contractors under the supervision of Defendants.  In short, Defendants' solution to the problems present in the paid mod business model was to instead sell additional DLC.  Furthermore, on information and belief, Defendants' had settled on this solution well before the Creation Club was announced, meaning Defendants knew that the Season Pass would not provide purchasers with all DLC as promised.

**ANSWER: Defendants deny that allegations relating to THE ELDER SCROLLS®**

**V: Skyrim have any relevance to any claim or defense and, on that basis, deny the**

**allegations of paragraph 28.  Defendants deny the remaining allegations of paragraph 28.**

## CLASS REPRESENTATIVE

29.     Plaintiff Devine, purchased Fallout 4 at a GameStop store located in California a

few weeks after the release of the game in 2015.  Subsequently, on or about April 27, 2019,

Devine purchased the Season Pass for Xbox One via his Xbox Console, from the Xbox Games

Store/Microsoft Store.  The Xbox Games Store/Microsoft Store is a digital distribution platform

that allows Xbox One console users to purchase digital copies of games, season passes, and DLC

for their Xbox One consoles directly from the consoles themselves.  The product description for

the Season Pass of Fallout 4 on the Xbox Games Store/Microsoft Store stated (and continues to

11

state) "get the Fallout 4 season pass and get all Fallout 4 DLC for one S.P.E.C.I.A.L. price." In

purchasing the Season Pass, Devine relied on Defendants' representation in the product

description that he would "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price" (i.e. that he would

receive all of the Fallout 4 DLC.) and yet, contrary to what he expected, the Season Pass did not

give him access to the content from the Creation Club. Plaintiff has neither entered into any

arbitration agreement with Defendants nor entered into any arbitration agreement with any third

parties that would govern Plaintiff's claims against Defendants in this action.

     **ANSWER: Defendants do not have sufficient information to admit or deny the**

**allegations of paragraph 29, and therefore deny them.**

### CLASS ACTION ALLEGATIONS

     30.    Plaintiff brings this action on his own behalf, through his representative, and as a
class action on behalf of the Class defined herein, pursuant to, and properly maintainable under
Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3). The Class consists of millions of Season Pass
holders victimized by Defendants' fraud and other actions. Specifically, Plaintiff brings this suit
on behalf of the following Class:

> The **"Worldwide Damages Class"**: All persons who paid for
> and/or acquired the Season Pass for Fallout 4, regardless of
> platform or method of purchase. The class excludes counsel
> representing the class and all persons employed by said counsel,
> governmental entities, Defendants Bethesda Softworks LLC,
> Bethesda Softworks, and ZeniMax Media Inc., any entity in which
> Defendants Bethesda Softworks LLC or ZeniMax Media Inc. have
> a controlling interest, Defendants Bethesda Softworks LLC,
> Bethesda Softworks, or ZeniMax Media Inc.' s officers, directors,
> affiliates, legal representatives, employees, co-conspirators,
> successors, subsidiaries, and assigns, any judicial officer presiding
> over this matter, the members of their immediate families and
> judicial staff, and any individual whose interests are antagonistic to
> other class members.

     **ANSWER: Defendants do not have sufficient information to admit or deny the**

**allegations of paragraph 30, and therefore deny them.**

12

31.     Devine will be the class representative of the Worldwide Damages Class.

**ANSWER: Defendants do not have sufficient information to admit or deny the**

**allegations of paragraph 31, and therefore deny them.**

32.     Defendants subjected Plaintiff and the Class to the same wrongdoing and harmed them in the same manner.  Now, Plaintiff and the Class seek to enforce the same rights and remedies pursuant to the same legal theories: breach of contract, unjust enrichment, promissory estoppel, fraud or deceit, fraudulent concealment, negligent misrepresentation, tort arising out of breach of contract, breach of express warranty, and violation of the Maryland Consumer Protection Act.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is**

**entitled to any relief.  Defendants do not have sufficient information to admit or deny the**

**allegations of paragraph 32, and therefore deny them.**

33.     Numerosity: The proposed class is so numerous that individual joinder of all its members is impracticable.  While the exact number and identities of the Class Members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.  It is estimated that the "Worldwide Damages Class"  consists of at least one million members.  The disposition of the claims of these Class Members in a single class action will provide substantial benefits to all parties and to the Court.

**ANSWER: Defendants do not have sufficient information to admit or deny the**

**allegations of paragraph 33, and therefore deny them.**

34.     Typicality: Plaintiff's claims are typical of the claims of the Class in that his claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and is based on the same legal theory as their claims.  Moreover, Plaintiff's measure of damages is the same as that of the Class.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is**

**entitled to any relief.  Defendants do not have sufficient information to admit or deny the**

**allegations of paragraph 34, and therefore deny them.**

35.     Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the Class.  Undersigned counsel has substantial experience in prosecuting complex lawsuits and class action litigation.  Plaintiff and undersigned counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so.  Neither Plaintiff nor his counsel have any interests adverse to the Class.

13

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is entitled to any relief.  Defendants do not have sufficient information to admit or deny the allegations of paragraph 35, and therefore deny them.**

36.    <u>Superiority of Class Action and Impracticability of individual Actions</u>: Plaintiff and the members of the Class suffered the same harm as a result of Defendants' unlawful conduct.  The same claims and defenses are at issue for all class members.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Individual joinder of all members of the Class is impractical.  Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by the Defendants' common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class Members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the judicial system, and protects the rights of the Class Members.  Adjudication of individual Class Members' claims with respect to Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other Class Members to protect their interests.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is entitled to any relief.  Defendants do not have sufficient information to admit or deny the allegations of paragraph 36, and therefore deny them.**

37.    <u>Common Questions of Law and Fact Predominate</u>: In addition, the requirements of Federal Rule of Civil Procedure 23 are satisfied by questions of law and fact common to the claims of Plaintiff and of each member of the Worldwide Damages Class and which predominate over any question of law or fact affecting only individual members of the Worldwide Damages Class.  Common questions of law and fact include, but are not limited to, the following:

    i.     Are members of the Worldwide Damages Class entitled to all Fallout 4 DLC as a result of their purchase of the Season Pass?

    ii.    Is Creation Club content DLC?

    iii.   Did Defendants make affirmative misrepresentations that the Season Pass would provide access to all Fallout 4 DLC?

    iv.   Did Defendants conceal and/or omit the fact that the Season Pass would not include Creation Club content?

    v.    Did Class Members suffer damages as a result of Defendants' actions?

    vi.   Did Defendants breach their contracts with class members by failing to provide them with access to Creation Club content?

14

vii. Did Defendants unjustly enrich themselves at the expense of Class Members by failing to provide Class Members with access to Creation Club content?

viii. Should Defendants be subject to promissory estoppel by failing to provide Class Members with access to Creation Club content?

ix. Did Defendants commit promissory estoppel by failing to provide Class Members with access to Creation Club content?

x. Did Defendants defraud Class Members?

xi. Did Defendants engage in negligent misrepresentation?

xii. Did Defendants engage in tortious conduct arising out of breach of contract?

xiii. Did Defendants breach express warranties with regards to the Season Pass?

xiv. Did Defendants violate the Maryland Consumer Protection Act?

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is entitled to any relief.  Defendants do not have sufficient information to admit or deny the allegations of paragraph 37, and therefore deny them.**

38. <u>Notice</u>: Notice can be provided via internet publication, published notice and/or through mail and paid for by the Defendants.

**ANSWER: Defendants do not have sufficient information to admit or deny the allegations of paragraph 38, and therefore deny them.**

## FIRST CLAIM FOR RELIEF

## BREACH OF CONTRACT

### (By All Plaintiffs Against the Defendants)

39. The allegations of paragraphs 1 through 38 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

**ANSWER: Defendants re-allege and incorporate by reference each and every response above as fully set forth herein.**

40. Season Passes were originally sold to Plaintiff and class members by Defendants.

**ANSWER: Defendants admit that the Season Pass was made available to FALLOUT® 4 customers.  Defendants deny the remaining allegations of paragraph 40.**

15

41.     Defendants directly sold Season Passes to Plaintiffs, sold Season Passes to Plaintiffs through physical and/or online marketplaces that acted as Defendants' agents for the purposes of the sale, and/or sold Season Passes to physical and online marketplaces, which in turn sold the Season Passes to Plaintiffs, effectuating an assignment of the rights conferred by the Season Passes.

**ANSWER: Defendants admit that the Season Pass was made available to**

**FALLOUT® 4 customers.  Defendants deny the remaining allegations of paragraph 41.**

42.     Accordingly, Plaintiffs entered into an agreement with Defendants whereby Plaintiffs were sold Season Passes for Fallout 4.

**ANSWER: Defendants admit that the Season Pass was made available to**

**FALLOUT® 4 customers.  Defendants deny the allegations of paragraph 42.**

43.     Pursuant to the terms of their contracts with Defendants, Plaintiffs were entitled to "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."

**ANSWER: Defendants admit that Season Pass customers were entitled to download**

**and use Fallout 4 DLC.  Defendants deny the allegations of paragraph 43.**

44.     Creation Club content constitutes DLC.

**ANSWER: Defendants deny the allegations of paragraph 44.**

45.     Plaintiffs fully and properly performed all conditions, covenants, and acts required to be performed on their part in accordance with the terms and conditions of the Season Pass purchase.

**ANSWER: Defendants deny the allegations of paragraph 45.**

46.     Defendants breached their obligations under the agreement to Plaintiffs by failing to provide Plaintiffs with access to all Creation Club content.

ANSWER: **Defendants deny any liability or wrongdoing, and/or that Plaintiff is**

**entitled to any relief.  Defendants deny the allegations of paragraph 46.**

47.     As a direct and proximate result of Defendants' breach, Plaintiffs have sustained damages.

16

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff has sustained any damage or is entitled to any relief.  Defendants deny the allegations of paragraph 47.**

## SECOND CLAIM FOR RELIEF

## UNJUST ENRICHMENT

### (By All Plaintiffs Against the Defendants)

48.     The allegations of paragraphs 1 through 47 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

**ANSWER: Defendants re-allege and incorporate by reference each and every**

**response above as fully set forth herein.**

49.     Plaintiffs conferred a benefit upon Defendants, namely revenue from Plaintiffs' purchase of the Season Pass.

**ANSWER: Defendants do not have sufficient information to admit or deny the**

**allegations of paragraph 49, and therefore deny them.**

50.     Defendants were aware of the benefit they received from Plaintiffs.

ANSWER: **Defendants deny the allegations of paragraph 50**.

51.     It is inequitable for Defendants to retain the benefit conferred on them by Plaintiffs because they received revenue from the sale of Season Passes while falsely claiming that purchasers would "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price,"  when they would not in fact receive the DLC from Creation Club.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is**

**entitled to any relief.  Defendants deny the allegations of paragraph 51.**

52.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages.

17

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff has sustained any damage is entitled to any relief.  Defendants deny the allegations of paragraph 52.**

### THIRD CLAIM FOR RELIEF

### PROMISSORY ESTOPPEL

### (By All Plaintiffs Against the Defendants)

53.     The allegations of paragraphs 1 through 52 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

**ANSWER: Defendants re-allege and incorporate by reference each and every response above as fully set forth herein.**

54.     Defendants made a clear and definite promise to purchasers of the Season Pass: "get the Fallout 4 season pass and get all Fallout 4 DLC for one S.P.E.C.I.A.L. price"

**ANSWER: Defendants deny the allegations of paragraph 54**.

55.     Creation Club content constitutes DLC.

**ANSWER: Defendants deny the allegations of paragraph 55.**

56.     Defendants had a reasonable expectation that their offer would induce action on the part of Plaintiffs, namely that it would induce Plaintiffs to purchase the Season Pass.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is entitled to any relief.  Defendants deny the allegations of paragraph 56.**

57.     Defendants' actions induced actual and reasonable action by Plaintiffs, namely purchasing the Season Pass.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is entitled to any relief.  Defendants deny the allegations of paragraph 57**.

18

58.     Defendants' actions caused a detriment that could only be avoided by the enforcement of their promise that purchasers of the Season Pass would receive all DLC, including all Creation Club content.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is**

**entitled to any relief.  Defendants deny the allegations of paragraph 58**.

59.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff has**

**sustained any damages or is entitled to any relief.  Defendants deny the allegations of**

**paragraph 59.**

### FOURTH CLAIM FOR RELIEF

### FRAUD OR DECEIT

### (By All Plaintiffs Against the Defendants)

60.     The allegations of paragraphs 1 through 59 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

**ANSWER: Defendants re-allege and incorporate by reference each and every**

**response above as fully set forth herein.**

61.     Defendants made a false representation of material fact, namely that purchasers would "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."

**ANSWER: Defendants deny the allegations of paragraph 61.**

62.     Defendants knew their representations were false or acted with such reckless indifference to the truth that it would be reasonable to charge Defendants with knowledge of the falsity of their representations.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is entitled to any relief.  Defendants deny the allegations of paragraph 62.**

63.     Defendants intended that Plaintiffs would act in reliance of such statements.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is entitled to any relief.  Defendants deny the allegations of paragraph 63.**

64.     Plaintiffs did justifiably rely on the representations of Defendants.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is entitled to any relief.  Defendants deny the allegations of paragraph 64**.

65.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff has sustained any damages or is entitled to any relief.  Defendants deny the allegations of paragraph 65.**

66.     Further, Defendants acted with malice in making their misrepresentations to Plaintiffs and Plaintiffs are accordingly entitled to punitive damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; punitive damages; attorneys' fees; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff has sustained any damage or is entitled to any relief.  Defendants deny the remaining allegations of paragraph 66.**

20

## FIFTH CLAIM FOR RELIEF

## FRAUDULENT CONCEALMENT

## (By All Plaintiffs Against the Defendants)

67.     The allegations of paragraphs 1 through 66 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

**ANSWER: Defendants re-allege and incorporate by reference each and every**

**response above as fully set forth herein.**

68.     Defendants intentionally concealed a material fact that they had a duty to disclose, namely that the Season Pass would not in fact provide Plaintiffs with access to all Fallout 4 DLC and that it would not provide them with access to all Creation Club content.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is**

**entitled to any relief.  Defendants deny the allegations of paragraph 68.**

69.     Defendants intended to induce Plaintiffs to act differently from how Plaintiffs would have acted had they known the true facts.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is**

**entitled to any relief.  Defendants deny the allegations of paragraph 69.**

70.     Because of the concealment Plaintiffs acted in a manner different from how they would have acted had they known the true facts.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is**

**entitled to any relief.  Defendants deny the allegations of paragraph 70.**

71.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff has**

**sustained any damages or is entitled to any relief.  Defendants deny the allegations of**

**paragraph 71.**

72.     Further, Defendants acted with malice in making their misrepresentations to Plaintiffs and Plaintiffs are accordingly entitled to punitive damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; punitive damages; attorneys' fees; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff has**

**sustained any damages or is entitled to any relief.  Defendants deny the allegations of**

**paragraph 72.**


## SIXTH CLAIM FOR RELIEF

## NEGLIGENT MISREPRESENTATION

### (By All Plaintiffs Against the Defendants)

73.     The allegations of paragraphs 1 through 72 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

**ANSWER: Defendants re-allege and incorporate by reference each and every**

**response above as fully set forth herein.**

74.     Defendants owe a duty of care to Plaintiffs, including, but not limited to, one arising out of their role as the entities that directly or indirectly sold and/or marketed the DLC to Plaintiffs.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is**

**entitled to any relief or duty of care.  Defendants deny the allegations of paragraph 74.**

75.     Defendants negligently made a false statement of material fact about the Season Pass, namely that purchasers would "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is**

**entitled to any relief.  Defendants deny the allegations of paragraph 75**

76.     Defendants intended that Plaintiffs would act in reliance upon the statement.

22

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is entitled to any relief.  Defendants deny the allegations of paragraph 76**.

77.     Defendants knew that Plaintiffs probably would rely on the statement, which, if false, would cause loss or injury to Plaintiffs.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is entitled to any relief.  Defendants deny the allegations of paragraph 77.**

78.     Plaintiffs justifiably acted in reliance on the statement.

**ANSWER: Defendants deny the allegations of paragraph 78**.

79.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff has sustained any damages or is entitled to any relief.  Defendants deny the allegations of paragraph 79.**

80.     Further, Defendants acted with malice in making their misrepresentations to Plaintiffs and Plaintiffs are accordingly entitled to punitive damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; punitive damages; attorneys' fees; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff has sustained any damage or is entitled to any relief.  Defendants deny the allegations of paragraph 80.**

## SEVENTH CLAIM FOR RELIEF

## TORT ARISING OUT OF BREACH OF CONTRACT

### (By All Plaintiffs Against the Defendants)

23

81.     The allegations of paragraphs 1 through 80 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

**ANSWER: Defendants re-allege and incorporate by reference each and every**

**response above as fully set forth herein.**

82.     Season Passes were originally sold to Plaintiff and class members by Defendants.

**ANSWER: Defendants deny the allegations of paragraph 82.**

83.     Defendants directly sold Season Passes to Plaintiffs, sold Season Passes to Plaintiffs through physical and/or online marketplaces that acted as Defendants' agents for the purposes of the sale, and/or sold Season Passes to physical and online marketplaces, which in turn sold the Season Passes to Plaintiffs, effectuating an assignment of the rights conferred by the Season Passes.

**ANSWER: Defendants admit that the Season Pass was made available to**

**FALLOUT® 4 customers.  Defendants deny the remaining allegations of paragraph 83.**

84.     Accordingly, Plaintiffs entered into an agreement with Defendants whereby Plaintiffs were sold Season Passes for Fallout 4.

**ANSWER: Defendants admit that the Season Pass was made available to**

**FALLOUT® 4 customers. .  Defendants deny the allegations of paragraph 84.**

85.     Pursuant to the terms of their contracts with Defendants, Plaintiffs were entitled to "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."

**ANSWER: Defendants admit that Season Pass customers were entitled to download**

**and use Fallout 4 DLC.  Defendants deny the remaining allegations of paragraph 85.**

86.     Creation Club content constitutes DLC.

**ANSWER: Defendants deny the allegations of paragraph 86.**

87.     Plaintiffs fully and properly performed all conditions, covenants, and acts required to be performed on their part in accordance with the terms and conditions of the Season Pass purchase.

**ANSWER: Defendants do not have sufficient information to admit or deny the allegations of paragraph 87, and therefore deny them.**

88.     Defendants breached their obligations under the agreement to Plaintiffs by failing to provide Plaintiffs with access to all Creation Club content.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is entitled to any relief.  Defendants deny the allegations of paragraph 88.**

89.     In stating that Plaintiffs would "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price" upon purchasing the Season Pass, Defendants knew their representations were false or acted with such reckless indifference to the truth that it would be reasonable to charge Defendants with knowledge of the falsity of their representations.  In the alternative, Defendants acted negligently in making this statement.  Moreover, Defendants intentionally concealed that the Season Pass would not in fact provide Plaintiffs with access to all Fallout 4 DLC and that it would not provide them with access to all Creation Club content.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is entitled to any relief.  Defendants deny the allegations of paragraph 89.**

90.     A nexus exists between Defendants' tortious acts and breach of the underlying contract such that the tortious conduct and the contract are so intertwined that one cannot be viewed in isolation from the other.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff is entitled to any relief.  Defendants deny the allegations of paragraph 90**.

91.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff sustained any damage or is entitled to any relief.  Defendants deny the allegations of paragraph 91.**

92.     Further, Defendants acted with malice in making their misrepresentations to Plaintiffs and Plaintiffs are accordingly entitled to punitive damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; punitive damages; attorneys' fees; all loss of interest on all amounts

paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff sustained any damage or is entitled to any relief.  Defendants deny the allegations of paragraph 92.**

## EIGHTH CLAIM FOR RELIEF

## BREACH OF EXPRESS WARRANTY

### (By All Plaintiffs Against the Defendants)

93.     The allegations of paragraphs 1 through 92 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

**ANSWER: Defendants re-allege and incorporate by reference each and every response above as fully set forth herein.**

94.     A warranty existed for the Season Pass.

**ANSWER: Defendants deny the allegations of paragraph 94.**

95.     Under the terms of the warranty, purchasers would "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."

**ANSWER: Defendants deny the allegations of paragraph 95.**

96.     Creation Club content constitutes DLC.

**ANSWER: Defendants deny the allegations of paragraph 96.**

97.     The Season Pass did not conform to the warranty because purchasers of the Season Pass did not receive Creation Club content.

**ANSWER: Defendants deny the allegations of paragraph 97.**

98.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages.

**ANSWER**: Defendants deny any liability or wrongdoing, and/or that Plaintiff sustained any damages or is entitled to any relief.  Defendants deny the allegations of paragraph 98.

99.     Before filing this lawsuit, Plaintiff provided Defendants with written notice of their breach of warranty on behalf of himself and all purchasers of the Season Pass.  On information and belief, Defendants have been aware for many months of complaints by Season Pass purchasers who have not received access to Creation Club content, but have willfully chosen to not abide by the terms of the warranty Defendants created.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; punitive damages; attorneys' fees; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

**ANSWER**: Defendants deny any liability or wrongdoing, and/or that Plaintiff is entitled to any relief.  Defendants deny the allegations of paragraph 99.

## NINTH CLAIM FOR RELIEF

## VIOLATION OF MARYLAND CONSUMER PROTECTION ACT ("MCPA), MD.

## CODE COMMERCIAL LAW ¶ 13-101 ET SEQ.

### (By All Plaintiffs Against the Defendants)

100.    The allegations of paragraphs 1 through 99 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

**ANSWER**: Defendants re-allege and incorporate by reference each and every response above as fully set forth herein.

101.    Plaintiff is a consumer within the meaning of the MCPA.

**ANSWER**: Defendants do not have sufficient information to admit or deny the allegations of paragraph 101, and therefore deny them.

27

102.    The Season Pass is used primarily for personal, household, and/or family purposes and constitutes a consumer contract, consumer goods and/or consumer services within the meaning of the MCPA.

**ANSWER: Defendants do not have sufficient information to admit or deny the**

**allegations of paragraph 102, and therefore deny them.**

103.    Among other violations of the MCPA, Defendants have done at least the following:

i. Defendants made false and/or misleading oral and/or written statements, visual descriptions, and/or other representations that had a capacity, tendency, and/or effect of deceiving or misleading consumers, namely that the Season Pass would provide purchasers with access to all DLC, when it in fact did not provide access to Creation Club content.
ii. Defendants represented that the Season Pass has a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which it does not have, namely that the Season Pass would provide purchasers with access to all DLC, when it in fact did not provide access to Creation Club content.
iii. Defendants represented that the Season Pass is of a particular standard, quality, grade, style, or model which it not, namely that the Season Pass would provide purchasers with access to all DLC, when it in fact did not provide access to Creation Club content.
iv. Defendants failed to state a material fact if the failure deceives or tends to deceive, namely by failing to state that the Season Pass did not in fact provide access to all DLC, including Creation Club content.
v. Defendants advertised or offered the Season Pass without intent to sell, lease.  or rent it as advertised or offered, namely by failing to sell consumers a Season Pass that actually provides access to all DLC, including Creation Club content.
vi. Defendants engaged in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of material facts with the intent that a consumer rely on the same in connection with the promotion or sale of the Season Pass, namely with regards to the representation that the Season Pass that provides access to all DLC, including Creation Club content.
vii. Defendants engaged in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of material facts with the intent that a consumer rely on the same in connection with Defendants' subsequent performance with respect to their obligations under the terms of the Season Pass.

**ANSWER: Defendants deny the allegations of paragraph 103**.

104.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered an injury and/or loss and have sustained damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; punitive damages; attorneys' fees; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

**ANSWER: Defendants deny any liability or wrongdoing, and/or that Plaintiff sustained any damage or is entitled to any relief.  Defendants deny the allegations of paragraph 104.**

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

Plaintiff failed to state a claim upon which relief can be granted and Plaintiff's claims should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff has not pled facts necessary to support Plaintiff's claims for relief.  In particular, Plaintiff has not pled facts to definitively show when and where Plaintiff purchased the FALLOUT® 4 Season Pass and when and where Plaintiff saw the alleged advertisements that are the basis of Plaintiff's claims.

### SECOND AFFIRMATIVE DEFENSE
### (Laches)

Plaintiff has unreasonably delayed in bringing claims against Defendant.  The Creation Club was announced in June of 2017.  In June of 2016, Bethesda announced that Nuka World would be the last Fallout 4 DLC.  Accordingly, Defendant has waited more than four years after purchasing FALLOUT® 4, more than three years after Bethesda announced that no additional content or DLC would be included in the season pass, and more than two years after the announcement of the creation club to bring this suit.  Plaintiff has made no excuse for the delay

29

in bringing the suit.  In the interim, the availability of evidence and witnesses related to Plaintiff's claims have diminished prejudicing Defendants

### THIRD AFFIRMATIVE DEFENSE
**(Estoppel, Abandonment, or Waiver)**

By his conduct, representations and omissions, Plaintiff has waived, relinquished, and/or abandoned, and/or is equitably estopped from asserting any claim for relief against Defendants. Plaintiff has unreasonably delayed in bringing claims against Defendant.  The Creation Club was announced in June of 2017.  In June of 2016, Bethesda announced that Nuka World would be the last Fallout 4 DLC.  Accordingly, Defendant has waited more than four years after purchasing FALLOUT® 4, more than three years after Bethesda announced that no additional content or DLC would be included in the season pass, and more than two years after the announcement of the creation club to bring this suit. By Plaintiff's own admission, Plaintiff purchased the Season Pass after multiple announcements regarding what content was included in the Season Pass and, as a result and at least for these reasons, has abandoned, waived, or is estopped from asserting his claims.

### FOURTH AFFIRMATIVE DEFENSE
**(Acquiescence)**

As detailed above, Plaintiff purchased the Season Pass after multiple announcements regarding what content was included in the Season Pass and knowing what content was included. For at least the above reasons, Plaintiff's claims are barred, in whole or in part, by acquiescence.

### FIFTH AFFIRMATIVE DEFENSE
**(Assumption of Risk)**

As detailed above, Plaintiff purchased the Season Pass after multiple announcements regarding what content was included in the Season Pass and knowing what content was included. By his conduct, representations and omissions, Plaintiff's claims are barred, in whole or in part,

30

by assumption of risk.

## SIXTH AFFIRMATIVE DEFENSE
### (No Contract)

By his conduct, representations and omissions, Plaintiff has not demonstrated that a contract as characterized by the Plaintiff existed between the parties.

## SEVENTH AFFIRMATIVE DEFENSE
### (Lack of Capacity to Contract)

By his conduct, representations, and omissions, because of Plaintiff's status of a minor a the time of purchase of both FALLOUT® 4 and the Season Pass, Plaintiff lacked the capacity to enter into a contract.

## EIGHTH AFFIRMATIVE DEFENSE
### (Improper Notice of Breach)

By his conduct, representations and omissions, Plaintiff failed to provide proper notice of a breach of any alleged contract and prevented Bethesda from having the opportunity to remedy any alleged breach.

## NINTH AFFIRMATIVE DEFENSE
### (Full Performance)

By his conduct, representations and omissions, Plaintiff has failed to demonstrate that Defendants did not fully perform any alleged contract.  Although, Defendants deny the existence of a contract as alleged by Plaintiff, Defendants fulfilled all obligations under the alleged contract created by Plaintiff's purchase of FALLOUT® 4 and the Season Pass.

## TENTH AFFIRMATIVE DEFENSE
### (Impossibility of Performance)

By his conduct, representations and omissions, Plaintiff has failed to demonstrate that Defendants would be capable of providing the relief requested.

31

## ELEVENTH AFFIRMATIVE DEFENSE
### (Impracticability of Performance)

By his conduct, representations and omissions, Plaintiff has failed to demonstrate that the relief Plaintiff requests from Bethesda is practical and could be provided by Bethesda.

## TWELFTH AFFIRMATIVE DEFENSE
### (Failure to Meet the Heightened Pleading Requirements of Rule 9(b))

By his conduct, representations and omissions, Plaintiff has failed to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) for Plaintiff's allegations that are arising in fraud.  Plaintiff has not pled facts sufficient to show the particularity of when and where he purchased the FALLOUT 4 game or observed the allegedly fraudulent representations that Plaintiff allegedly relied upon.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Improper Venue)

On information and belief, Plaintiff's purchase of a license for FALLOUT® 4 and the FALLOUT® 4 Season Pass was governed by a provision requiring arbitration to resolve disputes between Plaintiff and Bethesda.  Plaintiff's claims should be dismissed, and Plaintiff should be compelled to proceed in arbitration under Federal Rule of Civil Procedure Rule 12(b)(3).

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Unjust Enrichment)

By his conduct, representations and omissions, Plaintiff seeks relief beyond what he is entitled to recover, and an award of judgment would unjustly enrich Plaintiff.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (Failure to Join a Party)

Plaintiff' purchased the Season Pass and FALLOUT® 4 from third-party distributors and on information and belief, his purchase raises issues unique to those distributors.  By his conduct, representations and omissions, Plaintiff has failed to join indispensable parties under Federal Rule

32

of Civil Procedure Rule 19 and Plaintiff's claims should be dismissed under Federal Rule of Civil

Procedure Rule 12(b)(7).

### SIXTEENTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

Due to his delay, Plaintiff has failed to bring this suit within the statute of limitations of

three years for contract disputes, three years for fraud, and other relevant statutes of limitations,

and his claims are therefore barred from any recovery and/or relief.

### SEVENTEENTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

By his conduct, representations and omissions, Plaintiff has acted unethically and in bad

faith in making the allegations herein.  In particular, Plaintiff's delay in purchasing the Season

Pass, the subject of this action, for more than four years after its release and his purchase of

FALLOUT® 4, and only a few months before bringing suit, suggests Plaintiff was motivated to

purchase the Season Pass as a pretext for bringing this unfounded lawsuit against Bethesda.  As a

result, Plaintiff should be barred from any equitable remedies.

### EIGTEENTH AFFIRMATIVE DEFENSE
### (Lack of an Unequivocal Promise)

By his conduct, representations and omissions, Plaintiff has failed to demonstrate that any

Defendant made an unequivocal promise upon which Plaintiff is basing his allegations.

### NINETEENTH AFFIRMATIVE DEFENSE
### (Lack of Reasonable Detrimental Reliance)

By his conduct, representations and omissions, Plaintiff has failed to demonstrate that

Plaintiff reasonably relied on any unequivocal promise by Defendants to Plaintiff's detriment.

### TWENTIETH AFFIRMATIVE DEFENSE
### (No Warranty)

By his conduct, representations and omissions, Plaintiff has not demonstrated that

33

Defendants made an express, or other, warranty as characterized by the Plaintiff.

## **PRAYER FOR RELIEF**

Defendants deny that Plaintiff is entitled to any of the relief for which they pray as to any cause of action.

Wherefore, Defendants pray as follows:

1. That Plaintiff takes nothing by reason of its Complaint;

2. That judgment be entered for Defendants;

3. That Defendants be awarded their costs of suit incurred in defense of this Complaint;

4. That Defendants be awarded their attorneys' fees incurred in defense of this Complaint; and

5. For such other relief as the Court deems proper.


Dated: November 8, 2019          Respectfully submitted,



                                 */s/ Margaret A. Esquenet*
                                 Margaret A. Esquenet (Bar No. 27775)
                                 FINNEGAN, HENDERSON, FARABOW,
                                   GARRETT & DUNNER LLP
                                 901 New York Avenue NW
                                 Washington, D.C. 20001-4413
                                 (202) 408-4000 (phone)
                                 (202) 408-4400 (fax)
                                 margaret.esquenet@finnegan.com

                                 *Attorney for Defendants*
                                 *Bethesda Softworks LLC, Bethesda Softworks, and*
                                 *ZeniMax Media Inc.*


34

## CERTIFICATE OF SERVICE

I, Margaret A. Esquenet, hereby certify that on November 8, 2019, the foregoing

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST

AMENDED CLASS ACTION COMPLAINT, was filed and served using the Court's CM/ECF

system, and was also served via e-mail, upon:

> Charles Gilman, Esq.
> H. Briggs Bedigian, Esq.
> **Gilman & Bedigian, LLC**
> 1954 Greenspring Drive, Suite 250
> Timonium, MD 21093
> Tel: (410) 560-4999
> Fax: (410) 308-3116
> Email: cgilman@gblegalteam.com
> Email: hbb@gblegalteam.com
>
> Filippo Marchino, Esq.
> Thomas E Gray, Esq.
> **The X-Law Group P.C.**
> 625 Fair Oaks Ave., Ste. 390
> South Pasadena, CA 91030
> Tel: (213) 599-3380
> Fax: (213) 599-3370
> Email: fm@xlawx.com
> Email: tg@xlawx.com
>
> *Counsel for Plaintiff*

> /s/ Margaret A. Esquenet
> Margaret A. Esquenet

# **<u>EXHIBIT C</u>**

| | |
|---|---|
| **From:** | MDD_CM-ECF_Filing@mdd.uscourts.gov |
| **To:** | MDDdb_ECF@mdd.uscourts.gov |
| **Subject:** | Activity in Case 8:19-cv-02009-TDC Devine v. Bethesda Softworks, LLC et al Order |
| **Date:** | Friday, September 4, 2020 8:32:32 AM |

**EXTERNAL Email:**

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### District of Maryland

### Notice of Electronic Filing

The following transaction was entered on 9/4/2020 at 8:31 AM EDT and filed on 9/4/2020

**Case Name:** Devine v. Bethesda Softworks, LLC et al
**Case Number:** 8:19-cv-02009-TDC
**Filer:**
**Document Number:** 81(No document attached)

**Docket Text:**
**PAPERLESS ORDER re: ECF No. 45- all remaining deadlines in the Amended Scheduling Order are stayed pending mediation. The parties shall file a Joint Status Report 10 days following the conclusion of the Settlement Conference. Signed by Magistrate Judge Gina L Simms on 9/4/2020. (Simms, Gina)**

**8:19-cv-02009-TDC Notice has been electronically mailed to:**

Charles A Gilman (Terminated)    cgilman@cgilmanlaw.com, janet@gblegalteam.com, kelsey@gblegalteam.com, sara@cgilmanlaw.com

Hendrick Briggs Bedigian (Terminated)    hbb@gblegalteam.com

Margaret Aldona Esquenet    margaret.esquenet@finnegan.com, John.Kozikowski@finnegan.com, docketing@finnegan.com, laura.mcclafferty@finnegan.com

Filippo Marchino (Terminated)    fm@xlawx.com

Thomas E Gray (Terminated)    tg@xlawx.com, mr@xlawx.com, tc@xlawx.com

Anna Naydonov      anna.naydonov@finnegan.com

Sydney N English      syndey.english@finnegan.com

**8:19-cv-02009-TDC Notice will not be electronically delivered to:**

# **EXHIBIT D**

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## GREENBELT DIVISION

|  |  |
|---|---|
| JACOB DEVINE, Individually and on Behalf of All Others Similarly Situated <br><br> Plaintiff, <br><br> v. <br><br> BETHESDA SOFTWORKS LLC, BETHESDA SOFTWORKS, and ZENIMAX MEDIA INC., <br><br> Defendants. | Case No. 8:19-cv-02009-TDC <br><br> **JOINT STATUS REPORT BY PLAINTIFF JACOB DEVINE AND DEFENDANTS BETHESDA SOFTWORKS LLC, BETHESDA SOFTWORKS, AND ZENIMAX MEDIA INC.** |

As ordered by the Court (ECF No. 81), Plaintiff Jacob Devine and Defendants Bethesda Softworks LLC, Bethesda Softworks, and ZeniMax Media Inc. (collectively "The Parties") hereby submit their joint report.

On December 21, 2020 The Parties participated in a Settlement Conference before Magistrate Judge Charles B. Day.  The Parties did not settle this litigation at the Settlement Conference. The Parties intend to discuss a new schedule for the case in January or February of 2021 and provide a proposed scheduling order for the Court's consideration.

Dated: December 31, 2020                    Respectfully Submitted,


                                        */s/ Filippo Marchino*

                                        Filippo Marchino, Esq. (Pro Hac Vice Granted)
                                        fm@xlawx.com
                                        Thomas E. Gray, Esq. (Pro Hac Vice Granted)
                                        tg@xlawx.com

1

**THE X-LAW GROUP, P.C.**
625 Fair Oaks Ave., Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380
Fax: (213) 599-3370

Charles Gilman (Bar No. 26435)
cgilman@gblegalteam.com
H. Briggs Bedigian (Bar No. 27113)
Hbb@gblegalteam.com
**GILMAN & BEDIGIAN, LLC**
1954 Greenspring Drive, Suite 250
Timonium, MD 21093
Tel: (410) 560-4999
Fax: (410) 308-3116

*Attorneys for Plaintiff*
*Jacob Devine, Individually and on Behalf of All*
*Others Similarly Situated*


*/s/ Margaret A. Esquenet*
Margaret A. Esquenet (Bar No. 27775)
Anna B. Naydonov (Bar No. 21144)
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER LLP
901 New York Avenue NW
Washington, D.C. 20001-4413
(202) 408-4000 (phone)
(202) 408-4400 (fax)
margaret.esquenet@finnegan.com
anna.naydonov@finnegan.com

*Attorney for Defendants*
*Bethesda Softworks LLC, Bethesda Softworks, and*
*ZeniMax Media Inc.*

DECLARATION OF MARGARET A. ESQUENET –
Page 82

## CERTIFICATE OF SERVICE

I, Filippo Marchino, hereby certify that on December 31, 2020, the foregoing **JOINT STATUS REPORT BY PLAINTIFF JACOB DEVINE AND DEFENDANTS BETHESDA SOFTWORKS LLC, BETHESDA SOFTWORKS, AND ZENIMAX MEDIA INC.** was filed and served using the Court's CM/ECF system, upon:

Margaret A. Esquenet, Esq.
Anna B. Naydonov, Esq.
Sydney N. English, Esq.
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Avenue NW
Washington, D.C. 20001-4413
(202) 408-4000 (phone)
(202) 408-4400 (fax)
margaret.esquenet@finnegan.com
anna.naydonov@finnegan.com
sydney.english@finnegan.com

*Attorneys for Defendants*
*Bethesda Softworks LLC, Bethesda Softworks, and ZeniMax Media Inc.*

/s/ Filippo Marchino
Filippo Marchino

# **EXHIBIT E**

From:         MDD_CM-ECF_Filing@mdd.uscourts.gov
To:           MDDdb_ECF@mdd.uscourts.gov
Subject:      Activity in Case 8:19-cv-02009-TDC Devine v. Bethesda Softworks, LLC et al Order
Date:         Tuesday, January 5, 2021 1:39:44 PM

EXTERNAL Email:

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### District of Maryland

Notice of Electronic Filing

The following transaction was entered on 1/5/2021 at 1:39 PM EST and filed on 1/5/2021
**Case Name:**       Devine v. Bethesda Softworks, LLC et al
**Case Number:**     8:19-cv-02009-TDC
**Filer:**
**Document Number:** 91(No document attached)

**Docket Text:**
PAPERLESS ORDER directing the parties to provide a Joint Proposed Amended Scheduling Order by 2/1/2021. Signed by Magistrate Judge Gina L Simms on 1/5/2021. (bh5s, Chambers)

**8:19-cv-02009-TDC Notice has been electronically mailed to:**

Charles A Gilman (Terminated)     cgilman@cgilmanlaw.com, janet@gblegalteam.com, kelsey@gblegalteam.com, sara@cgilmanlaw.com

Hendrick Briggs Bedigian (Terminated)     hbb@gblegalteam.com

Margaret Aldona Esquenet     margaret.esquenet@finnegan.com, John.Kozikowski@finnegan.com, docketing@finnegan.com, laura.mcclafferty@finnegan.com

Filippo Marchino (Terminated)     fm@xlawx.com

Thomas E Gray (Terminated)     tg@xlawx.com, mr@xlawx.com, tc@xlawx.com

Anna Naydonov     anna.naydonov@finnegan.com

Sydney N English     sydney.english@finnegan.com

Carlos X Colorado     CC@XLAWx.com

**8:19-cv-02009-TDC Notice will not be electronically delivered to:**

# **EXHIBIT F**

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

### Southern Division

JACOB DEVINE, Individually and on Behalf of
All Others Similarly Situated

   Plaintiff,

v.

BETHESDA SOFTWORKS LLC,
BETHESDA SOFTWORKS, and
ZENIMAX MEDIA INC.

   Defendants.

**CASE NO. 8:19-cv-02009-TDC**

### JOINT PROPOSED AMENDED SCHEDULING ORDER

As requested by the Court (ECF No. 91) Plaintiff Jacob Devine and Defendants Bethesda

Softworks LLC, Bethesda Softworks, and ZeniMax Media Inc. hereby submit their joint proposed

amended scheduling order.

|  | **PROPOSED DEADLINE** |
|---|---|
| Deadline to Respond to Outstanding Discovery | April 8, 2021 |
| Deadline for Filing Motion to Compel for Phase I Discovery | May 8, 2021 |
| Deadline to File Motion to Compel Arbitration for Jacob Devine | July 15, 2021 |
| Motions to amend the pleadings or for joinder of additional parties | August 30, 2021 |
| Close of fact discovery and deadline for motions to compel fact discovery | December 17, 2021 |
| Plaintiff's Rule 26(a)(2) expert disclosures | February 7, 2022 |
| Defendants' Rule 26(a)(2) expert disclosures | March 7, 2022 |
| Plaintiff's rebuttal Rule 26(a)(2) expert disclosures | April 7, 2022 |
| Rule 26(e)(2) supplementation of disclosures and responses | April 22, 2022 |

| Deadline for Filing Motion to Compel Arbitration (for Any Additional Plaintiffs) | November 15, 2021 |
| Completion of Expert Discovery; submission of Post-Discovery Joint Status Report, see Part V | May 6, 2022 |
| Requests for admission | May 20, 2022 |
| Deadline to File Motion for Class Certification | July 20, 2022 |
| Deadline to File Opposition to Motion for Class Certification | September 12, 2022 |
| Deadline to File Reply in Support of Motion for Class Certification | October 3, 2022 |
| Notice of Intent to File a Pretrial Dispositive Motion, see Case Management Order Part II.A | 30 days from the order on class certification |

Dated: February 1, 2021                                  Respectfully Submitted,

/s/ Margaret A. Esquenet                        /s/ Filippo Marchino
Margaret A. Esquenet (Bar No. 27775)      Filippo Marchino (*Pro Hac Vice* Granted)
Anna B. Naydonov (D. Md. 21144)           fm@xlawx.com
FINNEGAN, HENDERSON, FARABOW,            Thomas E. Gray (*Pro Hac Vice* Granted)
GARRETT & DUNNER LLP                     tg@xlawx.com
901 New York Avenue NW                   **THE X-LAW GROUP, P.C.**
Washington, D.C. 20001-4413              625 Fair Oaks Ave., Suite 390
(202) 408-4000 (phone)                   South Pasadena, CA 91030
(202) 408-4400 (fax)                     Tel: (213) 599-3380
margaret.esquenet@finnegan.com           Fax: (213) 599-3370
anna.naydonov@finnegan.com

                                         Charles Gilman (Bar No. 26435)
*Attorneys for Defendants*                 cgilman@gblegalteam.com
*Bethesda Softworks LLC, Bethesda Softworks,*   H. Briggs Bedigian (Bar No. 27113)
*and ZeniMax Media Inc.*                   Hbb@gblegalteam.com
                                         **GILMAN & BEDIGIAN, LLC**
                                         1954 Greenspring Drive, Suite 250
                                         Timonium, MD 21093
                                         Tel: (410) 560-4999
                                         Fax: (410) 308-3116

                                         *Attorneys for Plaintiff*
                                         *Jacob Devine, Individually and on Behalf*
                                         *of All Others Similarly Situated*

### CERTIFICATE OF SERVICE

I, Filippo Marchino, hereby certify that on February 1, 2021, the foregoing **JOINT PROPOSED AMENDED SCHEDULING ORDER** was filed and served using the Court's CM/ECF system, upon:

Margaret A. Esquenet, Esq.
Anna B. Naydonov, Esq.
Sydney N. English, Esq.
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Avenue NW
Washington, D.C. 20001-4413
(202) 408-4000 (phone)
(202) 408-4400 (fax)
margaret.esquenet@finnegan.com
anna.naydonov@finnegan.com
sydney.english@finnegan.com

*Attorneys for Defendants*
*Bethesda Softworks LLC, Bethesda Softworks, and ZeniMax Media Inc.*

/s/ Filippo Marchino
Filippo Marchino

# **<u>EXHIBIT G</u>**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

J.D., *a Minor, by and through His Mother and Next Friend Suzanne Devine, Individually and on Behalf of All Others Similarly Situated,*

     J.D.,

     v.

BETHESDA SOFTWORKS, LLC,
BETHESDA SOFTWORKS and
ZENIMAX MEDIA INC.,

     Defendants.

Civil Action No. TDC-19-2009

## ORDER

Having reviewed the parties' Joint Status Report, ECF No. 46, it is hereby ORDERED that the parties' agreed upon amendments to the Scheduling Order are GRANTED as provided below. Furthermore, as to the limit on total number of hours of fact witness depositions, the parties shall be limited to 60 hours of deposition testimony each.

|  | **CURRENT DEADLINE** | **AMENDED DEADLINE** |
|---|---|---|
| Close of Pre-Mediation Discovery |  | May 15, 2020 |
| Deadline for Filing of pre-mediation motions, including Motion to Compel Discovery and Arbitration |  | June 1, 2020 |
| Motions to amend the pleadings or for joinder of additional parties | June 19, 2020 |  |
| Plaintiffs Rule 26(a)(2) expert disclosures | July 2, 2020 | December 7, 2020 |
| Deadline for Completion of Mediation |  | July 31, 2020 |
| Defendant's Rule 26(a)(2) expert disclosures | July 31, 2020 | January 7, 2021 |
| Re-Opening of Discovery |  | August 3, 2020 |
| Plaintiffs rebuttal Rule 26(a)(2) expert disclosures | August 14, 2020 | January 21, 2021 |

| Rule 26(e)(2) supplementation of disclosures and responses | August 21, 2020 | January 28, 2021 |
| Completion of Discovery; submission of Post-Discovery Joint Status Report, see Part V | September 14, 2020 | December 4, 2020 |
| Requests for admission | September 21, 2020 | December 9, 2020 |
| Deadline to File Motion for Class Certification | October 14, 2020 | February 8, 2021 |
| Deadline to File Opposition to Motion for Class Certification | November 13, 2020 | March 8, 2021 |
| Deadline to File Reply in Support of Motion for Class Certification | December 2, 2020 | March 28, 2021 |
| Notice of Intent to File a Pretrial Dispositive Motion, see Case Management Order Part II.A | 30 days after the Court's Decision regarding class certification. | |

Date: January 21, 2020



THEODORE D. CHUANG
United States District Judge